CITY BANK AND TRUST COMPANY, Appellant, v. WARTHEN SERVICE COMPANY, dba WARTHEN BUICK CO., Respondent

No. 7594

May 14, 1975                                          535 P.2d 162

*Austin, Thorndal & Liles,* and *Leland E. Backus,* Las Vegas, for Appellant.

*Earl & Earl,* Las Vegas, for Respondent.

# OPINION

By the Court, MOWBRAY, J.:

City Bank and Trust Company commenced this action against Warthen Service Company, doing business as Warthen Buick Co., to recover damages in the sum of $3,562.80 for the conversion of a 1970 Buick automobile.

The case was tried before the district judge sitting without a jury. At the conclusion of the presentation of plaintiff's evidence, Warthen moved to dismiss the complaint under the provisions of Rule 41(b) of NRCP. The district judge granted the motion, and the Bank has appealed.

1. *The Facts.*

In August 1970, in Tulsa, Oklahoma, the Bank loaned Calvin R. and Mae Creasman $3,939, to be applied to the purchase of a new Buick automobile. The Bank and the Creasmans signed a security agreement purporting to cover the Buick, which was perfected when the Bank caused the Creasmans' financial statement to be filed with the County Clerk of Oklahoma County.

The Creasmans in 1970 loaned the Buick to Gary Knowlton.[1] Knowlton made two installment payments on the Buick, and then he fraudulently obtained an Oklahoma certificate of title for the vehicle in his own name. Less than two months later, on May 15, 1971, Knowlton, without the knowledge or permission of the Creasmans, sold the car to Warthen for $2,700. Warthen made no effort to ascertain whether or not

---

[1] Mae Creasman testified at the trial as follows:

"Q. [by Bank's attorney, Mr. Liles]. Did you sell the automobile?
"A. No, I did not.
"Q. You were letting him [Mr. Knowlton] use the automobile?
"A. The agreement was that if he paid it off as he wanted to do then I would sign the title over to him, in such time as the note was cleared at the bank in Tulsa, or if he could raise the money and finance the car and pay off the bank of [sic] Tulsa, then I would sign the title over to him.
"Q. Did you ever sign the title over to this individual?
"A. No, sir.
"Q. What was this individual's name?
"A. Gary Knowlton, K-n-o-w-l-t-o-n, I believe."

the vehicle was subject to a security interest.[2] The Oklahoma title which Knowlton had obtained indicated there were no liens on the vehicle. Upon discovery of the sale to Warthen, Bank made demand for return of the vehicle or the sum of $3,562.80, representing the balance due on the Creasman loan. Warthen rejected the demand, and this suit followed.

2.  *The Security Agreement and Financing Statement.*

Warthen predicated its 41(b) motion to dismiss on two grounds: (1) that the Bank's security interest was not perfected, in that the security agreement and the financing statement contained a misdescription of the collateral, the Buick automobile; and (2) that the Bank had failed to prove that the car had been brought into Nevada within the four-month period immediately preceding the date when Knowlton sold the car to Warthen.

.  The misdescription of the Buick was contained in the identification number of the vehicle as it was typed both on the security agreement and on the financing statement. Instead of typing the correct number, "1970 Buick Wildcat Ser. No. 466670X–111904 new," an employee of Bank typed "1970 Buick Wildcat Ser. No. 66670X111904 new," thereby erroneously omitting the first digit of the identification number on each document.

Bank argues that the typographical omission in the identification number constituted a minor error and that the description of the Buick was sufficient to comply with the standard prescribed by the Uniform Commercial Code. We agree.

UCC 9–203, as adopted in 12A Okla. Stats. Anno. § 9–203, states that a security interest is not enforceable against third parties unless the security agreement is signed by the debtor and contains a description of the collateral.[3]

---

[2]Warthen did check with the Clark County Sheriff's Office to determine whether the car had been stolen and was advised that it was not.

[3]12A Okla. Stats. Anno. § 9–203:

"(1) Subject to the provisions of Section 4–208 on the security interest of a collecting bank and Section 9–113 on a security interest arising under the Article on Sales, a security interest is not enforceable against the debtor or third parties unless

"(a) the collateral is in the possession of the secured party; or

"(b) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops or oil, gas or minerals to be extracted or timber to be cut, a description of the land concerned. In describing collateral, the word 'proceeds' is sufficient without further description to cover proceeds of any character.

"(2) A transaction, although subject to this Article, is also subject

UCC 9–402, as adopted in 12A Okla. Stats. Anno. § 9–402, relates to the financing statement and specifies that it is not sufficient unless it contains a statement describing the collateral.[4]

With respect to the standard of specificity of description required, we note in Official Comment No. 1 to UCC 9–203 that the draftsmen of the Uniform Commercial Code indicate that UCC 9–110 is the applicable code section covering the adequacy of the description of the collateral in a security agreement. The drafters of the Code also refer us to UCC 9–110 with respect to the requirements of the description of the collateral in a financing statement. See Official Comment No. 1 to UCC 9–402.

UCC 9–110, as adopted in 12A Okla. Stats. Anno. § 9–110, provides:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific *if it reasonably identifies what is described.* Laws 1961, p. 165, § 9–110." (Emphasis added.)

The Official UCC Comment to that section is, in part, as follows:

". . . The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it— that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings,

---

to 15 O.S. 1951, Chapter 6, entitled Loan of Money, and in the case of conflict between the provisions of this Article and any such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein. Laws 1961, p. 166, § 9–203."

[4]12A Okla. Stats. Anno. § 9–402:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.

". . .

"(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading. Laws 1961, p. 175, § 9–402."

often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test. . . ."

The testimony adduced at the trial below established that the first six numbers of the vehicle's identification number indicated that the vehicle was a 1970 Buick Wildcat custom convertible. In other words, the first six numbers alone repeated what was already described in the words preceding the identification number on the security agreement and financing statement. It is only the last six numbers of the vehicle identification number which distinguish this 1970 Buick Wildcat custom convertible from any other like automobile. Thus it is the Bank's contention that the description in the security agreement and financing statement did the task assigned to it: It made possible the identification of the automobile. We agree.

In Still Associates v. Murphy, 267 N.E.2d 717 (Mass. 1971), an action in conversion against a subsequent purchaser of a truck, the serial number on the financing statement was one digit in error. The court, in holding in favor of the secured party, ruled that where the error in the description is not on its face sufficiently serious to invalidate the financing statement, the party seeking to invalidate it must make some showing of actual prejudice. The instant case having been terminated by a ruling on a motion under NRCP 41(b), whether the digital error prejudiced Warthen cannot as yet be finally determined. See Bank of N.Am. v. Bank of Nutley, 227 A.2d 535 (N.J. App. 1967).

The notice filing concept of the Uniform Commercial Code, borrowed from the Uniform Trust Receipts Act, requires but a simple notice. This notice, i.e., the filing of a financing statement, was and is widely and properly hailed as an advance in commercial law. The district judge's misunderstanding of the Code's purpose, in holding that the description had to be precisely correct, was error.

3. *The Four-month Period.*

The four-month period of time is relevant, since UCC 9–103(3) [adopted in Oklahoma as 12A Okla. Stats. Anno. § 9–103(3) and adopted in Nevada as NRS 104.9103(3)] states in pertinent part:

". . . If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached [Oklahoma] and before being brought

into this state [Nevada], the security interest continues perfected in this state [Nevada] for four months . . ."

The evidence adduced below demonstrated that Knowlton took possession of the automobile in December 1970, that he made at least two payments on the vehicle which were mailed from Oklahoma, and that he obtained an Oklahoma certificate of title in March 1971. This was the only evidence adduced on this issue. From such evidence, it could be inferred that the Buick was in Oklahoma as late as March 1971. Knowlton sold the Buick to Warthen on May 15, 1971. This constituted a sufficient quantum of proof to deny Warthen's motion to dismiss. A trial judge, in ruling on an involuntary dismissal motion, must accord every favorable factual intendment to the plaintiff. See Adelman v. Arthur, 83 Nev. 436, 433 P.2d 841 (1967); Roche v. Schartz, 82 Nev. 409, 419 P.2d 779 (1966); Schmidt v. Merriweather, 82 Nev. 372, 418 P.2d 991 (1966); Stewart & Horton Trust Account v. Autrand, 78 Nev. 447, 375 P.2d 750 (1962); Gunlock v. New Frontier Hotel Corp., 78 Nev. 182, 370 P.2d 682 (1962); Quimby v. City of Reno, 73 Nev. 136, 310 P.2d 850 (1957); Corn v. French, 71 Nev. 280, 289 P.2d 173 (1955).[5]

We have concluded, therefore, that the order below dismissing the complaint must be reversed and the case remanded for a trial on its merits. It is so ordered.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.

---

[5]The district judge's misunderstanding of the applicable standard in passing on Rule 41(b) motions is shown by the court's remarks made in granting the dismissal order:

"I'm also quite concerned about lack of affirmative proof that the car was in this [S]tate for less than four months. Admittedly the plaintiff has the burden of proving by a preponderance of the evidence the enforceability of this lien in this State and that would include the burden of establishing by the preponderance of the evidence that this car was not within the confides [sic] of this [S]tate for the four months preceding its sale to Warthen, to the defendant. There is some evidence from which inferences could possibly be made that the car, or at least its owner, was in Oklahoma within that four months period. The title certificate which he got within the four months gives his address as an Oklahoma address, that being his residence. Two payments were supposed to have been made from Oklahoma to the debtor. We could well infer from those facts that the automobile was there, but you can't conclusively presume that the question is [: 'D]oes that evidence in and of itself meet the burden of proof[?']."