**In the Matter of Delmont T. BOLINGER, Bankrupt.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Plaintiff,**

v.

**Delmont T. BOLINGER, Defendant.**

**Bankruptcy No. 79–60312 C–1.**

United States Bankruptcy Court, E. D. Michigan, S. D.

March 6, 1980.

Brownell, Andrews, Philpott & Piper, Douglas M. Philpott, Flint, Mich., for plaintiff.

Michael J. Mason, Flint, Mich., for defendant.

OPINION

HAROLD H. BOBIER, Bankruptcy Judge.

This controversy involves a dispute between General Motors Acceptance Corporation (G.M.A.C.) and the trustee of the bankrupt's estate over a car claimed as security by G.M.A.C., based upon a purchase money security agreement. The sole question presented for decision in this case is whether or not it is a fatal defect to describe the collateral in the installment sale contract and security agreement as a "Chevrolet" when, in fact it was a "Pontiac".

*Findings of Fact*

Delmont T. Bolinger, the bankrupt, purchased a used 1976 Pontiac, serial number 2Y39D6W128333, on January 12, 1979. As part of the sales transaction Bolinger signed an "Installment Sale Contract." The agreement provided in paragraph 12:

"DESCRIPTION OF SECURITY IN-TEREST. Seller retains a security interest under the Uniform Commercial Code in the property described above and any proceeds to secure payment and performance of buyer's obligation hereunder, including any additional indebtedness incurred as provided herein, and under any extensions or renewals hereof."

In the installment sale contract the car was incorrectly described as a "Chevrolet." The correct serial number was listed if the car had been correctly described as a "Pontiac." It was uncontroverted that the certificate of title for this car which was issued by the State of Michigan, correctly described the car as a "Pontiac" and noted the lien of G.M.A.C.

Bolinger filed straight bankruptcy on June 21, 1979. On September 20, 1979, G.M.A.C. filed a complaint seeking the reclamation of the Pontiac. The trustee filed an answer, claiming the lien was invalid because of the mis-description.

Along with the complaint, G.M.A.C. filed an affidavit of the office manager of the vendor of the automobile concerning the error in description on the installment sales contract. The affidavit, dated September 17, 1979 states:

"E. C. Emerick Jr., Office Manager of Uptegraff Motor Sales, Inc., first being duly sworn, deposes and says that an error was made when typing the installment sale contract dated January 23, 1979 which was reassigned to General Motors Acceptance Corporation. The vehicle sold to Delmont T. Bolinger, 4617 Kings Lane, Burton, Michigan, was shown on the installment sale contract as a 1976 Chevrolet, 4 Door, serial number 2Y69D6W128333. The installment sale contranc should have read as a 1976 Pontiac, 4 Door, serial number 2Y69D6W128333."

*Issue*

■ The sole issue herein is whether or not, under the facts as set out above, the description of the collateral in the security agreement, installment sale contract, was adequate under the Michigan Uniform Commercial Code, sections 9–203 and 9–110.

*Findings of Law*

Section 9–203(1)(b) of the Michigan U.C.C. states that a security interest is not enforceable unless

". . . the debtor has signed a security agreement which contains a description of the collateral . . ." Mich. Comp.L.Ann. § 440.9203(1)(b) (1967); Mich.Stat.Ann. § 19.9203(1)(b) (1975).

Official Comment 1 to this section states:

"The only requirements for the enforceability of non-possessory security interests in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral."

Comment 3 to 9–203 states:

"One purpose of the formal requisites stated in subsection (1)(b) is evidentiary. The requirement of [sic] written record minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured."

The situation described in official comment 3 is the precise conflict that has arisen in the instant case. Due to the inaccurate description in the installment sale contract, the exact nature of the collateral is unclear.

According to the system used by the General Motors Corporation for their vehicle identification numbers the error in the listed description is readily apparent. The GM coding system indicates the division or make of the car with the first digit of the identification (serial) number. The code for Chevrolet is "1", "2" is used for Pontiac, "3" for Oldsmobile, and so on. A description which contains both "Chevrolet" and "2" as the first digit of the identification number is unclear. The fact that there has been an error of some sort is apparent, but what sort of error? Was the typographical error in listing a "2" instead of a "1", or was it in listing "Chevrolet" instead of "Pontiac"? The stated description is clearly defective.

Section 9–110 of the U.C.C. provides that "any description of personal property . . . is sufficient whether or not it is specific if it reasonably identifies what is described." Mich.Comp.L.Ann. § 440.9110 (1967); Mich. Stat.Ann. § 19.9110 (1975). This section does not operate to save the defective description. The official commentary to section 9–110 states, in applicable part,

> "[t]he test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it *make possible the identification of the thing described.* Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called serial number test." Emphasis supplied.

When the secured property is a car, however, the only certain method of description is by way of vehicle serial or identification number. Where it is not possible to identify the thing described, the description fails. As discussed previously, from the description in the security agreement/installment sale contract, it was not possible to determine the identity of the collateral. Upon examination of the security agreement in this case, a potential creditor would not know if the collateral was a Chevrolet or a Pontiac. This court is of the opinion that the following language suggests the proper result in situations such as the instant case.

> "Where these two equally plausible interpretations are possible, the court concludes that the description in question was not sufficient in the sense of putting subsequent parties on notice, and upon a duty to inquire further, within the meaning of the Code provision." *In re Aragon Industries, Inc.*, 14 U.C.C.Rep. 1218, 1221 (S.D.Fla.1973).

■ This is due to the rule that, in order to be valid, a security agreement must describe the collateral sufficiently to permit identification. U.C.C. §§ 9–203(1)(b) and 9–110. Although there is authority for the proposition that errors which are of a minor nature do not serve to defeat a security

interest, these cases have dealt with this question from the standpoint of financing statements, and not security agreements. *See, e. g., Biggins v. Southwest Bank*, 490 F.2d 1304, 13 U.C.C.Rep. 928 (9th Cir. 1973); *Still Associates v. Murphy*, 358 Mass. 760, 267 N.E.2d 217, 8 U.C.C.Rep. 929 (1971). In order to determine the validity of a security interest, it is the security agreement, and not the financing statement which controls. *See, e. g., In re Sportsland, Inc.*, 17 U.C.C. Rep. 1333 (D.Mass.1975); *Marine Midland Bank-Eastern Nat. Ass'n. v. Conerty Pontiac-Buick, Inc.*, 352 N.Y.S.2d 953, 77 Misc.2d 311, 14 U.C.C.Rep. 814 (1974).

The attempt of the plaintiff G.M.A.C. to correct the defective description in the installment might have been effective but for the fact that it did not occur until well after the date of filing. By virtue of section 70(c) of the Bankruptcy Act, the trustee becomes a hypothetical lien creditor which operates to prevent the plaintiff herein from acting to retro-actively preserve its secured status. 11 U.S.C.A. § 110(c) (Cum.Supp.1979).

One of the stated objectives of the U.C.C. is to achieve uniformity of transfers in commerce, hence the clear and uncomplicated rules as to description of goods and methods of filing. The objective was to avoid the morass of case law that had grown up around the chattel mortgage practice. To allow the courts to deal with creditors on a piece meal basis to achieve "equity" where the creditor has failed to follow the simple requirements of the U.C.C. is self defeating. It makes each court a "legislature" when it deviates from the requirements. Better that the creditor take his "lumps" for his failure than to plunge the U.C.C. into the same destructive practices that prevailed in the superseded chattel mortgage era.

An Order will enter in accord with this opinion.