In the Matter of Walter Lee ELRIDGE and Izora Elridge, Debtors.

CITIZENS COMMERCIAL & SAVINGS BANK, a Michigan Banking Corporation, Plaintiff,

v.

Walter Lee ELRIDGE and Izora Elridge, Defendants.

Bankruptcy No. 80–00282.

United States Bankruptcy Court, E. D. Michigan, Southern Division.

May 5, 1981.

Brian M. Barkey, Flint, Mich., for debtor/defendant.

Michael A. Mason, Flint, Mich., Trustee.

Donald H. Robertson, Winegarden, Booth, Ricker, Shedd, Haley & Grossman, Flint, Mich., for plaintiff.

## MEMORANDUM OPINION

HAROLD H. BOBIER, Bankruptcy Judge.

### STATEMENT OF FACTS

The facts stipulated by the parties, can be briefly summarized. One of the debtors herein, Izora Elridge, purchased a 1978 Dodge Van from Chinonis Chrysler-Plymouth-Dodge, Inc., on April 4, 1978, and gave the dealer a security interest in that vehicle by executing a security agreement. The security agreement describes the collateral as a new 1978, 8 Cylinder Dodge Van, Model No. B200 bearing vehicle identification number B21BE8K10*6658.* (Emphasis supplied.) The dealer prepared and filed an application for certificate of title (commonly referred to as Form RD–108) with the Michigan Secretary of State's office and described the vehicle therein as bearing vehicle identification number B21BE8K105277. The application for the certificate of title indicates Citizens Commercial and Savings Bank ("Bank") as the first secured party pursuant to an assignment of the security interest acquired by the dealer to the Bank. (Emphasis supplied.)

A certificate of title was issued for the subject vehicle, indicating the Bank as the first lien holder, but bearing vehicle identification number B21BE8K105277. It has been stipulated to by the parties that this latter vehicle identification number is the correct one and that the debtor only owns one 1978 Dodge Van. Therefore, the last four digits of the vehicle identification number listed in the security agreement do not correspond to the last four digits of the vehicle identification number listed in either the application for certificate of title or the actual certificate of title.

The debtors filed a joint voluntary petition in this Court on March 25, 1980, under Chapter 7 of the new Bankruptcy Code ("Code"). Subsequently, on August 26, 1980, the Bank filed an application to abandon the trustee's interest in the subject vehicle as being burdensome to the estate. The trustee filed an objection to the Bank's application on September 25, 1980, wherein he alleges that the Bank had not properly established its security interest in the vehicle, and therefore, the vehicle belonged to the estate of the debtor.

On November 5, 1980, an adjourned hearing was conducted on the Bank's application to abandon the subject vehicle and the trustee reiterated his objection at that time. The Court adjourned the hearing *sine die* pending further evidence and/or argument, and at the Court's request memorandum briefs have been filed by the Bank and trustee to support their respective positions.

### ISSUE

The sole issue for the Court's determination is whether an error in the last four digits of a thirteen digit vehicle identification number is sufficient to render invalid the Bank's claimed security interest in the motor vehicle. In other words, can the Bank validly perfect a security interest in the motor vehicle bearing vehicle identification number B21BE8K10*5277* when the security agreement under which it is granted a security interest erroneously describes the vehicle as bearing vehicle identification number B21BE8K10*6658,* the last four digits of which are in error? (Emphasis supplied.)

### DISCUSSION AND LAW INVOLVED

The Bank takes the position that under the Uniform Commercial Code ("U.C.C.") as adopted in Michigan, a four digit error in a vehicle identification number is not fatal to its claimed security interest in the collater-

al. The Bank principally relies on U.C.C. § 9–110 which states in its entirety:

For the purposes of this Article, any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. M.C.L.A. § 440.9110.

In addition, the Bank cites several cases which tend to illustrate that a "minor" error in the description of collateral is not fatal to the perfection of a security interest. For example, the Bank cites *In re Esquire Produce Company, Inc.*, 5 U.C.C.R.S. 257 (D.C.E.D.N.Y.1968) and *City Bank & Trust Co. v. Warthen Service Co.*, 91 Nev. 293, 535 P.2d 162, 16 U.C.C.R.S. 1370 (1975). In each of these cases there was a one digit error in a serial number which was the result of a typographical error, and under the circumstances, the courts held that irrespective of the misdescription, the security interests were valid. However, these cases can easily be distinguished from the present situation in that there is a four digit error which cannot be easily explained as a typographical error, if it matters whether or not it is such an error.

Perhaps the most persuasive case cited by the Bank in support of its position is *Appleway Leasing Inc. v. Wilkin*, 39 Or.App. 43, 591 P.2d 382, 26 U.C.C.R.S. 209 (1979). In that case a farm tractor was properly described as a Model 9600 Ford Tractor, but listed the serial number as DONNS015F2B, when in fact the proper serial number was C405350. The serial number listed was apparently a parts number. The Court in *Wilkin* held that the collateral was sufficiently identified to perfect a security interest in the collateral, despite the fact that the listed serial number was totally different from the correct serial number. It is clear from the Court's opinion that the primary reason for its holding is that the debtor owned only one Model 9600 Ford Tractor, and therefore, third parties would have been put on inquiry as to any outstanding security interest in the tractor.

The trustee, on the other hand, relies on U.C.C. § 9–203 which provides that a security interest is not enforceable unless the debtor has signed a security agreement which sufficiently describes the collateral. The trustee takes the position that U.C.C. § 9–203 is a type of statute of frauds provision designed to eliminate questions concerning which property of the debtor is subject to a creditor's security interest. U.C.C. § 9–203 states in pertinent part:

... a security interest is not enforceable against the debtor or third parties unless ... the debtor has signed a security agreement which contains a description of the collateral ... M.C.L.A. § 40.-9203(1)(b).

The trustee cites this Court's decision in the case of *In re Bolinger*, 3 B.R. 186, 28 U.C.C.R.S. 1119 (B.C. E.D.Mich.1980) as controlling in the present dispute. In *Bolinger*, this Court held there was an insufficient description of the collateral when the security agreement described a 1976 Chevrolet, vehicle identification number 2Y39D6W128333 when in fact the correct description of the automobile was a 1976 Pontiac, vehicle indentification number 2Y39D6W128333. The rationale used by this Court in setting aside the lien in the *Bolinger* case was as follows:

One of the stated objectives of the U.C.C. is to achieve uniformity of transfers in commerce, hence the clear and uncomplicated rule as to description of goods and methods of filing. The objective was to avoid the morass of case law that had grown up around the chattel mortgage practice. To allow the courts to deal with creditors on a piece meal basis to achieve 'equity' where the creditor has failed to follow the simple requirements of the U.C.C. is self defeating. It makes each court a 'legislature' when it deviates from the requirements. Better that the creditor take his 'lumps' for his failure than to plunge the U.C.C. into the same destructive practices that prevailed in the superseded chattel mortgage era. *Id.* at 188, 28 U.C.C.R.S. at 1123.

Although this Court believes that the *Bolinger* decision was a correct one, it is not the only reason for sustaining the trustee's position in the present case. In addition to

*Bolinger* and the cases cited therein, further reference should be made to the cases of *In re Aragon Industries, Inc.*, 14 U.C.C.R.S. 1218 (D.C. S.D.Fla.1973), *In re E. F. Anderson and Son, Inc.*, 12 U.C.C.R.S. 567 (D.C. M.D.Ga.1973), *In re Hodgin*, 7 U.C.C.R.S. 612 (D.C. W.D.Okla.1970), and *In re Tomlin*, 2 U.C.C.R.S. 197 (D.C. E.D.Ky.1963), which have come to the same conclusion.

It is this Court's opinion that the vehicle identification number is the most important source of information concerning the "reasonable description" requirement of a motor vehicle. With respect to Dodge motor vehicles, the first seven digits or letters of the vehicle identification number identifies the model number, engine size, year of production and the assembly plant where the vehicle was produced. *The last six digits distinguish one specific vehicle from all other vehicles of the same model, engine, year and place of assembly.* Therefore, when four of the last six digits in the vehicle identification number in a security agreement differ from the last six digits on the vehicle in the debtor's possession, or indicated on the certificate of title, it is impossible to say that the same vehicles are involved and that the Bank has been granted a security interest in the vehicle in the debtor's possession without a plenary suit and sufficient tracing evidence beginning with the factory. In other words, somewhere in the world there is a 1978 Dodge Van with a vehicle identification number of B21BE8K106658, as indicated in the security agreement. However, that is not the vehicle owned by the debtor, Izora Elridge.

There is a compelling reason for requiring a creditor to identify an automobile by its correct vehicle identification number. It is the vehicle identification number which the Secretary of State's office uses in determining whether the vehicle has already been issued a certificate of title and/or whether the vehicle has been stolen. This is a statutory duty imposed on the Secretary of State which states:

The department upon receiving application for original registration of a vehicle or any certificate of title *shall first check the engine and serial number or vehicle number shown in the application against the indexes of registered motor vehicles and against the index of stolen and recovered motor vehicles required to be maintained by this Act.* (Emphasis supplied.) M.C.L.A. § 257.220.

Therefore, there are two reasons why the Bank in the present case should not be allowed to proceed with its abandonment proceeding. First of all, it cannot claim a validly perfected security interest in the subject motor vehicle because the security agreement from which it obtains its rights contains a fatally defective description of the collateral. Secondly, to allow the Bank to modify the vehicle identification number used in the security agreement through parole evidence would thwart a valid exercise of the state's police power; namely, the registration of motor vehicles used upon the state road system, and also thwart the stated aim of the U.C.C.

The issue is not whether the creditor can prove that the vehicle is the actual one the parties contemplated. That the creditor could probably do by calling into court the necessary witnesses. The creditor can do this without the aid of the Uniform Commercial Code by using common law advocacy remedies. Rather, the issue is whether the creditor has complied with the requirements of the Uniform Commercial Code. I hold "No."

Section 1–102 of the Uniform Commercial Code states, under a heading entitled Construction of Act:

(2) Underlying purposes and policies of this Act are,

a) to simplify, clarify and modernize the law governing commercial transactions;

. . . . .

c) to make uniform the law among the various jurisdictions. M.C.L.A. § 440.-1102(2).

Section 9–203 of the U.C.C., entitled Enforceability of Security Interest Against Debtor or Third Parties, provides:

(1)(b) The debtor has signed a security agreement which contains a description of the collateral ... M.C.L.A. § 440.-9203(1)(b).

Comment 5 of the Official U.C.C. Comments to Section 9–203 states in its entirety:

The formal requisites stated in this section are not only conditions to the enforceability of a security interest against third parties. They are in the nature of a Statute of Frauds. Unless the secured party is in possession of the collateral, his security interest, absent a writing which satisfies subsection (1)(b), *is not enforceable even against the debtor, and cannot be made so on any theory of equitable mortgage or the like.* If he has advanced money, he is of course a creditor and, like any creditor, is entitled after judgment to appropriate process to enforce his claim against his debtor's assets; he will not, however, have against his debtor the rights given a secured party by Part 5 of this Article on Default. The theory of equitable mortgage, insofar as it has operated to allow creditors to enforce informal security agreements against debtors, may well have developed as a necessary escape from the elaborate requirements of execution, acknowledgment and the like which the nineteenth century chattel mortgage acts vainly relied on as a deterrent to fraud. Since this Article reduces formal requisites to a minimum, the doctrine is no longer necessary or useful. *More harm than good would result from allowing creditors to establish a secured status by parole evidence after they have neglected the simple formality of obtaining a signed writing.* (Emphasis supplied.) M.C.L.A. § 440.9203, Com. 5.

Essentially, the creditor is here seeking an equitable mortgage. Because of plain negligence, the creditor has not complied with the simple formalities required by the U.C.C. Equity depends upon whose bull is being gored. Balanced against the creditor's petition is the viability of the Uniform Commercial Code. It can be destroyed by poor law and that is what the creditor is asking this Court to decree.

Essentially, the serial numbers on a certificate of motor vehicle title are the only means of identifying the vehicle. The last six digits are the only way that anyone can identify a specific vehicle. Even one wrong digit makes impossible the identity of a motor vehicle without extraneous evidence. When such an identification becomes a controversy in Court, then all of the trappings of a trial are necessary.

Without the identification number on a certificate of title to identify a specific vehicle by a claimed secured creditor, the parties involved are no better off than if the certificate of title had stated, for example, One 1977 black Chevrolet Malibu two-door. The fact that there may be 300,000 on the road of the same identical description emphasizes the need for an exact description for a specific vehicle—that is why the correct serial numbers on the title are the only means of correctly, and without trial, identifying a specific vehicle.

Without serial numbers a debtor, on demand of a creditor with a security lien on a vehicle, could purchase a motor vehicle of the same year and model make, of much less value, from a used car dealer or junk dealer, and substitute it for the vehicle that he secured to the creditor. He could not do this, of course, if the creditor could rely on the specific vehicle indicated by the correct serial numbers on the certificate of title.

Permitting the creditor to escape the responsibility of its negligent act and order that the faulty security is valid defeats the purposes of the Uniform Commercial Code. It does not promote "simplicity and clarity," nor does it promote the ideal of "making uniform the law." In every court in the land, where creditors bring petitions such as this and succeed in varying the terms of the U.C.C. in order to avoid the responsibility of compliance, any decision of the Court which allows the creditor to achieve less than that demanded by the U.C.C. conflicts with the stated aim of the U.C.C. to make uniform the law. Each jurisdiction varying the terms of the U.C.C. winds up with a particular law for that jurisdiction. This is bad

law. Certainly it is contrary to the stated aim of the Uniform Commercial Code. No creditor or purchaser, even though put on notice, could "identify" the claimed vehicle as the one "described" in the security agreement. He would have to take the naked word of many people and then accept on faith. If he purchased or extended creditor on the vehicle, on application for a title he would likely be refused because another vehicle already bore that number. In no way does this facilitate commerce.

I am convinced, that had the Commissioners of the Uniform Commercial Code known that the last six digits of a vehicle identification number were the sole means of identifying one specific motor vehicle from another, they would not have used the unfortunate example of the "serial numbers test" as an example of liberal construction. *See* Official U.C.C. Comment to U.C.C. § 9–110.

Taken generally, the example is clearly appropriate. If the numbers identifying the manufacturing plant, for example, were incorrect no harm is done as the *specific vehicle* can be absolutely identified by the last six title numbers. The origin of manufacture is for the manufacturer's use only.

Taken specifically, as the creditor does, the example destroys the title number as a means of identifying a specific vehicle. If the U.C.C. Commentators had, for example, said "Except for the last numbers on a certificate of title, which identify a specific vehicle, a variation of title certificate numbers will not in and of itself, render a security agreement invalid," it would be a sound and sensible example of "liberal construction."

The quantity of opinions written on this identical issue give some idea of the great number of cases the courts have had to deal with. This constitutes a vast expenditure of taxpayers money to cure a creditors negligence for the sole benefits of the negligent creditor. It wastes judicial energy, and delays the use of the courts for trial of cases with more merit.

The courts are divided over the application of "liberal construction" of this specific issue. While there is still time to save the Uniform Commercial Code from the same destructive path of the discredited chattel mortgage era, let us do so. Let us use "liberal construction" in instances where there is no sound reason to be specific in description. Here the creditor would bend the U.C.C. to a use better suited for fungible goods.

The creditor dealing in financing secured sales has an immense advantage over general creditors. The Uniform Commercial Code was designed to codify existing practices and design new ones to implement and simplify commerce and provide rules by which creditors could, with great simplicity, secure themselves. It is a body of rules of conduct such as binds litigants and their attorneys in our court system. Creditors and their attorneys should be measured by the same standard of conduct.

Referring to the relief that may be granted under F.R.C.P. 60 upon a showing of mistake, inadvertence, surprise or excusable neglect the Court in *Ledwith v. Storkan*, 2 F.R.D. 539 (D.C. Neb. 1942) stated:

> Precisely what circumstances will avail to render the neglect of counsel excusable may not be adequately set down. But some measure of excusability may be gotten from decisions where relief has been granted. They include (a) continuous preoccupation with the trial of a distracting first degree murder case, (b) reliance on assurance by the court or a clerk thereof or opposing counsel as to the time of a trial, (c) failure to reach the place of trial in consequence of casualties in traffic (d) sudden illness of counsel, (e) unanticipated summons to the bedside of a dying relative, and other like incidents. In each instance there was inadvertence or neglect which intercepted the timely performance of a required act, but there was likewise some disturbing and distracting event which rendered the error excusable. *Id.* at 544.

True, the example is not on all fours. But shouldn't a creditor under such circumstances as this case be first made to make a showing of excusable performance, other

than negligence, at least before reaching the point of remedy?

The general public, whose taxes sustain the court system, should not have to rescue negligent creditors from their failures to comply with simplistic rules. There is available to them non-filing insurance for that purpose. They should bear their own damage as the negligences are unilateral.

## CONCLUSION

The above reasons taken together convince this Court that the Bank's application for an abandonment order should and shall be denied and its lien on the subject vehicle be and is hereby set aside.