**In re C.J. ROGERS, INC., Debtor.**

**William H. GRABSCHEID, Trustee, Plaintiff,**

**v.**

**CALVERT SALES, INC., Defendant.**

Bankruptcy No. 91–20388.
Adv. No. 92–2170.

United States Bankruptcy Court,
E.D. Michigan, S.D.,
Flint.

Nov. 23, 1992.

Jay N. Siefman, Birmingham, MI, for plaintiff.

Joseph J. Fabrizio, Bloomfield Hills, MI, for defendant.

MEMORANDUM OPINION ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

The facts relevant to the parties' cross-motions for summary judgment are undisputed. On October 19, 1990, the Debtor purchased equipment from Calvert Sales, Inc. pursuant to an installment sales/loan agreement whereby Calvert retained a security interest in the equipment. The Debtor executed two UCC–1 financing statements describing the equipment. On October 26, 1990, Calvert mailed the financing statements to the Michigan Secretary of State's Uniform Commercial Code Section for filing. Because the financing statements did not contain the Debtor's tax identification number, the secretary of state refused to file them. On March 28, 1991, the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. As of that date, no financing statement noting Calvert's security interest in the equipment was on record.

With an exception not relevant here, the Uniform Commercial Code provides that the rights of the holder of an unperfected security interest are "subordinate to the rights of: ... (b) A person who becomes a lien creditor before the security interest is perfected." Mich.Comp.Laws § 440.-9301(1). Upon commencement of this case, the Plaintiff acquired the same rights in the equipment as would be enjoyed by a hypothetical judicial lien creditor having no knowledge of Calvert's security interest. *See* 11 U.S.C. § 544(a)(1); *see also* Mich. Comp.Laws § 440.9301(3) (defining a "lien creditor" as including "a trustee in bankruptcy from the date of the filing of the petition").[1]

---

1. In a supplemental brief, Calvert argued that the trustee never specifically raised § 544, and so, even if the security interest is unperfected, it is effective as against the trustee. This argument loses sight of the fact that litigation in federal district court is through notice pleading.

Thus the issue here is whether Calvert's interest in the equipment was perfected. That issue, in turn, depends on whether Calvert filed the financing statements in question. *See* Mich.Comp.Laws §§ 440.-9303(1) and 440.9302(1). In determining whether the statements were filed, the parties agreed that the controlling law is found in sections 9–402 and 9–403 of the Uniform Commercial Code, Mich.Comp. Laws § 440.9402 and § 440.9403 (hereafter, "9402" and "9403," respectively).

Calvert did not dispute the fact that its financing statements were never actually filed. It instead argued that the statements must be deemed to have been filed pursuant to § 9403(1), which states that "[p]resentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article." Calvert stated that it paid the filing fee and presented for filing the two financing statements, and that the financing statements were therefore filed pursuant to this section. For the following reasons, I agree with the Plaintiff that this argument is unavailing.

A safe assumption is that a document must meet some minimum threshold of acceptability in order to constitute a "financing statement" for purposes of § 9403(1). Otherwise, a secured creditor could present, say, a birth certificate (or a blank piece of paper) accompanied by tender of the

filing fee and thereby "file" a financing statement perfecting its security interest. To determine what is minimally acceptable for filing, one must turn to § 9402. And with exceptions not applicable in this case, paragraph 13 of that section unambiguously requires that the document include the debtor's tax identification number.

Nor can there be any doubt that Calvert's failure to include the tax identification number rendered the documents unacceptable for filing. Pursuant to § 9402(14), "the secretary of state shall not accept [such deficient documents] for filing and shall return [them] to the secured party or other person who submitted [them]." *Cf.* § 9403(3) ("A continuation statement ... may, *but is not required to,* include the debtor's tax identification number." (emphasis added)). Since the rejection of the statements was justified, they were not constructively filed pursuant to § 9403(1).[2]

Any other interpretation of §§ 9402 and 9403 would make no sense from a policy standpoint. The purpose of recording a financing statement is to provide notice to third parties of the secured creditor's rights in the collateral. *See In re Angier,* 684 F.2d 397, 399 (6th Cir.1982); *Federal Land Bank v. Bay Park Place,* 162 Mich. App. 1, 7, 412 N.W.2d 222, 224; 4 U.C.C.Rep.Serv.2d 1594 (1987). That objective is of course defeated when the secretary of state refuses to accept a financing

*Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). And the complaint clearly put Calvert on notice of the nature of the Plaintiff's cause of action. Moreover, the Plaintiff specifically cited § 544 in paragraph 2 of his Motion for Summary Judgment and in paragraph 9 of his Response to Defendant's Motion for Summary Judgment.

In any event, § 544(a) does not itself empower the trustee to void a lien. Rather, it gives the trustee the same status as any of the hypothetical creditors/purchaser described in the statute. Because the rights that flow from this status (which the trustee enjoys by operation of law, regardless of whether asserted in a pleading) are not defined by § 544(a), it is inaccurate to say that a transfer of property is voided "pursuant to" that subsection (the Plaintiff's terminology). The trustee's ability to void a transfer is instead determined by the substantive law governing the respective rights of the transferee

and a person with the status conferred on the trustee by § 544(a)—in this case, the Uniform Commercial Code.

**2.** Contrary to Calvert's implicit assertion, the conclusion that the defect in the documents submitted by Calvert took them outside the scope of § 9403(1)'s protection is not undermined by § 9402(15). That paragraph states: "Notwithstanding subsections (13) and (14), if the secretary of state files a financing statement that does not contain ... the debtor's tax identification number and if the financing statement otherwise complies with applicable requirements, the financing statement shall be considered sufficient, valid and effective." By its terms, § 9402(15) applies to documents which have been filed, thereby assuming the very point in controversy: i.e., whether Calvert's financing statements were filed for purposes of Article 9 of the Uniform Commercial Code. It therefore is not relevant here.

statement that is presented for filing: A UCC search performed by a prospective lender or purchaser obviously will not uncover a financing statement that was rejected by the secretary of state.

If the rejection is through no fault of the secured party—as when the document meets the criteria enumerated under § 9402—then it is sensible (or at least not irrational) to assign the risk of improper rejection to any third parties who rely to their detriment on the public record. After all, the secured creditor has done all that is required or can reasonably be expected in attempting to provide notice of its security interest. Thus it is not surprising that the case law generally supports the position of the secured creditor in such situations. *See, e.g., In re Wood,* 38 B.R. 375, 37 U.C.C.Rept.Serv. 627 (Bankr.D.Idaho 1983); *In re Bufkin Bros., Inc.,* 757 F.2d 1573 (5th Cir.1985); *In re Graphics Plus Assocs.,* 94 B.R. 68, 7 U.C.C.Rep.Serv.2d 1285 (Bankr.W.D.Pa.1988); *cf. In re Gilbert,* 82 B.R. 456, 5 U.C.C.Rep.Serv.2d 1504 (Bankr. E.D.Mich.1988); *White & Summers Uniform Commercial Code* (2d Ed.1980), p. 951. ("Implicit in the definition of filing and explicit in the comments is the idea that errors of filing officers are not borne by creditors. The cases are clear that a mistake by a clerk … does not affect the perfection of the creditor's security interest where the financing statement presented was proper even though no notice is given to subsequent searchers.")

In this case, however, the rejection by the secretary of state of Calvert's financing statements was proper—indeed, it was mandated by statute. And allowing Cal-

vert to prevail over an innocent third party notwithstanding the fact that Calvert's own error led to the rejection is contrary to basic notions of equity.[3] Such a rule of law would also significantly diminish the incentive of secured creditors to comply with statutory filing requirements, and foster a great deal of uncertainty (and litigation) in commercial transactions.

In summary, I agree with the position of the Plaintiff that § 9403(1) protects only a party who presents a *properly executed* financing statement for filing. *See, e.g., In re Smith,* 205 F.Supp. 27, 29 (E.D.Pa.1962) (Section 9403(1) "refers to the presentation for filing of a financing statement which substantially complies with the Code's formal requirements for financing statements, and one which the filing officer would, therefore, be duty-bound to accept.") If the document is *properly* rejected, it is not filed; if it is actually filed[4] or improperly rejected, it is filed. In the case at bench, the financing statements did not include a mandatory term. As the financing statements were properly rejected, they were not "filed" under § 9403(1), and Calvert therefore cannot claim to possess a *perfected* security interest. Having only an unperfected security interest, Calvert's status is junior to that of a lien creditor such as the trustee. Accordingly, the Plaintiff is entitled to judgment as a matter of law and Calvert is not. An appropriate order has been entered.

---

**3.** Calvert argued that it was not made aware that the financing statements were rejected until March of 1992. But that does not change the fact that its own failure to comply with § 9402 caused the rejection. So whether Calvert was guilty of "simple" negligence (i.e., it submitted defective financing statements but was not promptly advised of that fact by the secretary of state) or gross negligence (i.e., it failed to correct the defect even after receiving prompt return of the defective statements), it is clearly in a less favorable position—in terms of equity—than is a (completely blameless) third party.

Moreover, "The general public, whose taxes sustain the court system, should not have to rescue negligent creditors from their failures to

comply with simplistic rules. There is available to them non-filing insurance for that purpose. They should bear their own damage as the negligences are unilateral." *In re Elridge,* 10 B.R. 835, 841, 36 U.C.C.Rept.Serv. 1422 (Bankr. E.D.Mich.1981).

**4.** If an improperly executed financing statement is actually filed, a third party can argue its legal insufficiency. However, the document is protected from such attack to the extent it is "not seriously misleading." Mich.Comp.Laws § 9402(8). *See, e.g., In re Darling Lumber, Inc.,* 56 B.R. 669, 42 U.C.C.Rep.Serv. 1101 (Bankr. E.D.Mich.1986).