**IN RE LMJ, INC., dba Crawdaddy's Hop, Debtor.**

**BANK OF CALIFORNIA, Appellant,**

v.

**LMJ, INC., dba CRAWDADDY'S HOP, and Landon Mack, Appellees.**

**No. CV–N–93–16–ECR.**

United States District Court, D. Nevada.

Sept. 2, 1993.

As Amended Sept. 9, 1993.

F. Dearmond Sharp, Michelle M. Erlach, Robison, Belaustegui, Robb and Sharp, Reno, NV, for Bank of California, appellant.

Alan R. Smith, Smith & Cope, Reno, NV, for appellees.

## ORDER

EDWARD C. REED, Jr., Judge.

This matter arises from a Chapter 11 petition for bankruptcy filed by LMJ, Inc. Specifically at issue is an appeal from the bankruptcy court's decision to approve a stipulation between LMJ, Inc. and Landon Mack (sole stockholder, officer and director of LMJ) granting Mack relief from the automatic stay in order to repossess, sell and retail all the proceeds from the sale of all the property of LMJ's bankruptcy estate. The relief was granted due to Mack's claimed perfected security interest in the estate.[1] The appellant in this matter, the Bank of California, is an unsecured creditor who owned the shopping center in which the Debtor leased space for the night club and restaurant known as Crawdaddy's. Debtor owes appellant $104,302.17 as an unsecured creditor and $35,153.16 in administrative expenses.

Appellant argues that Landon Mack did not have a perfected interest in the property and that the trustee should be ordered to have the proceeds from the sale of the estate property returned to the Debtor's estate to be shared by the unsecured creditors pursuant to 11 U.S.C. § 544. Section 544 allows the trustee as creditor to take priority over or "avoid" security interests that are unperfected under applicable state law. Appellant also asserts that Mack's

---

1. Mack loaned money to the Debtor evidenced by promissory notes from Debtor to Mack. In order to secure the notes Mack entered into a Security Agreement with Debtor and filed a UCC–1 financing Statement with the Nevada Secretary of State and the Washoe County Recorder's office. Both Financing statements describe the types or items of collateral as "personal property and fixtures on the lease [of the] Nightclub/Restaurant located at 7111 S. Virginia Street, Reno, Nevada." The bankruptcy court found that these statements "(1) sufficiently informs one that the debtors personal property secured by the financing statement is of a nature typically found in a nightclub/restaurant business and (2) that such property was available ... for inspection." (Bankruptcy Court Order dated December 12, 1992).

interest should be subordinated to the interest of other creditors pursuant to 11 U.S.C. § 105.

■ Appellant's reliance on § 544 is misplaced. The provision was designed from the beginning to assist the *trustee* in striking down secret liens and other transfers that prior thereto had evaded the trustee's attack. The section provides a trustee with the tool to enable him to challenge the validity of transactions which cannot be shown as preferential or fraudulent transfers, or transfers otherwise voidable under applicable state or federal law. The provision has been commonly termed the "strong arm clause." However it gives "strong arm" avoidance powers only to the trustee, or a debtor in possession. It is a trustee's tool in that it affords a trustee the rights remedies and powers necessary to secure all the debtor's property for fair and equal distribution according to the terms of the Code. 4 *Collier on Bankruptcy* § 544.01 (15th ed. 1993). The section was designed to aid the trustee in recovering properties of the estate for the eventual benefit of all creditors. *In re Johnson*, 28 B.R. 292 (N.D.Ill.1983). The Code section does not give avoidance powers to creditors, nor have the courts generally allowed creditors to invoke such power. *Saline State Bank v. Mahloch*, 834 F.2d 690 (8th Cir.1987). To allow complaining creditors standing to invoke § 544, would inevitably result in general creditors hindering plans to reorganize under Chapter 11, various motions and cross claims—creating needless confusion and inconvenience for all involved, and one group of creditors benefitting to the detriment of other unsecured creditors as a result of piecemeal litigation.[2] *Saline* at 694 (citations omitted). The proper remedy of a creditor when confronted with a debtor in possession who declines to perform fiduciary duties, such as to move to set aside alleged fraudulent transfer, is to petition for appointment of trustee. *In re Baugh*, 60 B.R. 102 (Bkrtcy.E.D.Ark.1986).[3] It would not have been premature for the Bank of California to file a motion for the appointment of a trustee, or commence an adversary proceeding to compel the debtor in possession to attempt to avoid Mack's security interest under § 544 at the time the stipulation was made and recognized by the bankruptcy court. The Bank has no power to avoid Mack's security interest under § 544 of the Bankruptcy Code. Thus, this Court will not order that the creditor (Bank) take priority over or "avoid" security interests that are unperfected under applicable state law.

■ However, despite the Bank's lack of standing to pursue remedy under § 544, the Bank's argument that Mack did not have a perfected security interest is valid. Applicable state law governs in determining whether the collateral has been sufficiently described so as to perfect a security interest. *In re Ashkenazy Enterprises, Inc.*, 94 B.R. 645 (Bankr.C.D.Cal.1986). Whether or not Mack's UCC filing is sufficient to perfect a security interest is an issue of law and will be reviewed de novo by this Court.

■ NRS 104.9402(1) provides as follows:

A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives and address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor *and contains a statement indicating the types, or describing the items, of collateral.* (emphasis added).

NRS 104.9110 provides:

For the purposes of this article *any description of personal property* or real estate is sufficient whether or not is spe-

---

**2.** Appellants have noted that at least one other unsecured creditor has an interest in avoiding Mack's priority claim in the property at issue. Appellant's Opening Brief (document # 10, p. 6, 1.14–17).

**3.** An alternative option might have been to seek permission from trustee or bankruptcy court to commence such an action, *See In re Munoz*, 111 B.R. 928 (D.Col.1990).

cific *if it reasonably identifies what is described.* (emphasis added).

The financing statement in the case at hand limited the description of the collateral to "the personal property and fixtures[4] on the lease and lease premises of the Nightclub/Restaurant located at 7111 S. Virginia Street, Reno, Nevada." "Personal property" encompasses such a broad range of possible collateral that it cannot be considered a descriptive term. NRS 104.9110 specifically requires some type of reasonable description. Including the location requirement of NRS 104.9402(1) (i.e. the address of the secured property) does not make it sufficiently descriptive. Using location specific terminology is meaningless because it is not dependable (e.g. the security interest loses perfected status if the debtor moves the collateral from a nightclub to an office building). In addition, the Code does not contemplate or require that the creditor searching the public records go to the debtor's place of business to examine the collateral. Such a requirement is not commercially reasonable. Creditors do not have the legal right to go into a debtors place of business to inspect property nor should they be burdened to do so. Moreover, the fact that the property is located in a nightclub/restaurant does not reasonably identify the collateral. Establishments considered "nightclub/restaurants" vary radically. For example, consideration of the personal property located in the Nightclub/Restaurants known as Hard Rock Cafe[5] as compared to Hooters[6] demonstrates the fact that there is, very often, no personal property "typical" to such an establishment.

■ NRS 104.9402(8) (referenced by appellees) provides that a financing statement substantially complying with statutory requirements is effective even if it contains "minor errors" which are not seriously misleading. This section does not salvage Mack's attempt to perfect his interest. "Minor errors" have been interpreted to include such things as the omission of the first digit of a number used to identify an automobile in a security agreement. *See City Bank Trust Co., v. Warthen Service Co.,* 91 Nev. 293, 535 P.2d 162 (1975).

There are no Nevada cases on the issue of the adequacy of "personal property" as a descriptive term for the purposes of a security interest. However, weighty authority exists in the Ninth Circuit decision of *In re Boogie Enterprises, Inc.,* 866 F.2d 1172 (9th Cir.1989). The Court in *Boogie,* interpreting the California UCC provision which is identical to that in the Nevada Revised Statutes, specifically held that "'personal property' cannot satisfy § 9402's requirement of identification of assets by 'types' or 'items' because 'personal property' refers to no more and no less than every kind of collateral perfectible under statute." *Id* at 1175.

The bankruptcy court's approval of the stipulation to vacate the stay was premised on the finding that Mack had a perfected security interest in the collateral. This finding is contrary to law. Mack is not a secured creditor.

This matter is remanded to the Bankruptcy Court with the requirement that Bankruptcy Court reevaluate its approval of the stipulation with the understanding that Mack did not have a perfected security interest. This Court is not privy to the priorities of all the creditors as a result of this change. However, the Court suggests that if the appellant determines that an adversarial proceeding is necessary to determine the rights of the creditors that the appellant request the trustee to bring such an action. The Court appreciates appellant's attempt to minimize the paperwork and filings by pursuing § 544 without the

---

4. The collateral removed was not fixtures. To be a fixture under NRS 104.9313 the personal property must be so related to the real estate that an interest arises under real estate law.

5. The international chain of Hard Rock Cafe's is known for its enormous collection of rock & roll memorabilia and blaring music.

6. The Hooters chain includes a local establishment. Hooters emphasizes the assets (personalities) of its waitresses as compared to its decor which is limited.

benefit of the trustee; however, the potential watershed effect of allowing a single creditor, among many, to do so most likely would cause such a strategy to backfire.

■ This Court also declines to subordinate the Mack claim to the unsecured creditors pursuant to 11 U.S.C. § 105. Appellants make cursory allegations of Mack's insider status, overreaching and personal gain. The mere fact that Mack is an insider does not prohibit him from enjoying the status of a priority creditor nor does it require automatic subordination of his claim. Section 105 endows the court with general equitable powers; however it does not authorize relief inconsistent with more specific laws. If appellant seeks equitable subordination pursuant to § 510(c) or otherwise, evidence of some misconduct is necessary. *See e.g.* 3 Collier on Bankruptcy § 510.05 (15th ed. 1993); *Pepper v. Litton*, 308 U.S. 295, 309–310, 60 S.Ct. 238, 246–247, 84 L.Ed. 281 (1939) (so called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contribution by the stockholder ... where the paid in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan); *Mosa v. Wilson–Bates Furniture Co.*, 94 Nev. 521, 583 P.2d 453, 454 (1978) (requirements for successfully alleging an alter ego action). The Bank in its pleadings before this Court, has not presented any evidence of misconduct on Mack's part or communicated any facts that would require subordination of Mack's claims.

**IT IS, THEREFORE, HEREBY ORDERED** that the decision by the bankruptcy court to vacate the stay and allow Mack to repossess, sell and retail the proceeds of the sale is **REMANDED.** The bankruptcy court must reevaluate it's decision on this matter considering Mack as an unsecured creditor only.