Submitted October 23, affirmed March 5, 1979

# APPLEWAY LEASING, INC., *Respondent,*
*v.*
# WILKEN, et al, *Appellants.*
## (No. 6610, CA No. 10911)

591 P2d 382

David C. Glenn, Madras, filed the brief for appellants.

Douglas A. Shepard and Shepard & Stewart, Madras, filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

LEE, J.

**LEE, J.**

This is an action at law for the conversion of a Ford tractor, model 9600, which Appleway Leasing, Inc. (plaintiff) "leased" to a farmer who subsequently "traded it in" on another tractor sold to him by Wilken Equipment Company (defendant).

Plaintiff contends that the tractor was *leased* to the farmer and that, therefore, defendant committed conversion by seriously interfering with plaintiff's ownership rights. Defendant responds that the tractor was *sold* to the farmer and that the "lease" was actually a security agreement which was unperfected because the financing statement which was filed contained an erroneous description of the collateral. Defendant appeals a trial court judgment for plaintiff.

ORS 71.2010(37) provides standards for determining whether a lease is truly a lease or was intended as a security interest. That section provides:

> " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * * Unless a lease or consignment is intended as a security, reservation of title thereunder is not a 'security interest' * * *. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

The above statute has been construed in *Peco, Inc. v. Hartbauer Tool and Die Co.*, 262 Or 573, 575, 500 P2d 708 (1972), as follows:

> "* * * [T]he first question to be answered is * * * whether the lessee may obtain the property for no additional consideration or for a nominal consideration. If so, the lease is intended for security. If not, it is then necessary to determine 'by the facts of each

[45]

case' whether the lease is *intended* as security * * *."
*Peco, Inc. v. Hartbauer Tool and Die Co.*, 262 Or 573,
575, 500 P2d 708 (1972). (Emphasis supplied.)

■ In the instant case, the "lease" does not expressly
provide an option to purchase the tractor; we must
therefore determine by the particular facts of this case
whether the lease was *intended* for security.

The purported "lease" contains several "sales" pro-
visions.[1] It provides that the "lessee" is responsible for
taxes and insurance on the tractor and that he bears
the risk of its loss. All warranties of fitness and
merchantability were also excluded. In addition, the
document provides that at the end of the five-year
lease period, the anticipated fair market wholesale
value of the tractor would be $1,900—substantially
less than the actual estimated value of $9,000 or
$10,000. Given the choices that would face the parties
at the end of the term, the only economically sensible
course would be for the lessee to purchase the tractor
for $1,900.

---

[1] The portion of the lease which mentions the anticipated fair market
wholesale value states:
    " * * * * *.

    "It being the intent of the parties to provide an incentive to Lessee
for careful treatment of the leased equipment and to provide for
liquidated damages in the event of excessive wear and tear, it is agreed
as follows:

    "(A) The anticipated fair market wholesale value of the leased
equipment upon termination of the lease is $1,900.00.

    "(B) Upon termination of the lease and re-delivery of the equip-
ment to Lessor, Lessee agrees to pay as additional rental and in
addition to the lease rental otherwise herein provided any sum by
which the anticipated fair market wholesale value of said equipment
as above set forth exceeds its actual fair market wholesale value at the
time of return.

    "(C) Lessor on the other hand agrees to reduce the rental herein
provided by any sum which the actual fair market wholesale value of
said equipment at the time of its return exceeds the anticipated fair
market wholesale value as above set forth.

    "* * * * *." There is evidence that upon termination of the lease the
actual fair market value of the tractor would be $9,000 to $10,000.

[46]

Finally, plaintiff testified that farmers commonly purchased the "leased" tractors for the anticipated fair market wholesale value listed in the agreement. We, therefore, hold that the "lease" is actually a security agreement which is governed by the provisions of ORS 79.1010 to 79.5070.

■ Having decided that the "lease" is a security agreement, it remains necessary to determine whether the erroneous description of the tractor in the financing statement was sufficient to reasonably identify it and put defendant on notice of plaintiff's security interest.

ORS 79.1100 provides:

"For the purposes of ORS 79.1010 to 79.5070 any description of personal property or real estate is sufficient whether or not it is specific if it *reasonably identifies* what is described." (Emphasis supplied.)

In the instant case, the tractor was correctly described as a Model 9600 Ford tractor but a nonexistent serial number was listed.[2] Nonetheless, the farmer only owned one Model 9600 Ford tractor and if defendant had looked for a financing statement, he would have been put on inquiry; *i.e.,* notice as to plaintiff's interest. We, therefore, hold that the description of the tractor was sufficient to reasonably identify it. Under these circumstances, the defective serial number did not vitiate the financing statement and plaintiff's perfected security interest prevails.

Affirmed.

---

[2] The serial number was listed as DONNS015F2B when in fact the serial number of this particular tractor was C405350. The first number was apparently a parts number. There was evidence that a dealer would have known that the listed number was not a serial number.