In re William Reinor NIEMI Norma Lee Niemi, Debtors.

Bankruptcy No. 382–01003.

United States Bankruptcy Court, D. Oregon.

Dec. 6, 1982.

John H. Clough, Portland, Or., for Universal Leasing Co.

Daniel F. Vidas, Portland, Or., for debtors.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

This matter came before the court upon the objection of Universal Leasing Co. ("Universal") to the debtors' proposed chapter 13 plan. The court considered the objection at the hearing on confirmation of the plan held on June 3, 1982. Universal appeared by its attorney, John H. Clough.

The facts of the case are as follows. Universal and the debtors entered into an agreement on December 26, 1979 in which the debtors agreed to pay Universal $162.00 per month for 36 months and Universal agreed to provide the debtors with a 1979 Honda Accord automobile. A similar agreement was reached on July 8, 1980 as to a 1979 Chevrolet pickup truck.

The debtors filed their joint chapter 13 petition on April 9, 1982, listing Universal as a secured creditor. The debtors stated their indebtedness on the Honda as $5800.00 with the value of the vehicle as $5,000.00, and their indebtedness on the Chevrolet as $5,100.00 with the value of the vehicle as $4,000.00. The schedules further indicate that the debtors returned the Chevrolet to Universal on March 9, 1982 in full satisfaction of Universal's claim against them as to that vehicle.

Universal filed two proofs of claim on May 17, 1982. Claim # 7 is in the amount

of $1,004.40 for the indebtedness on the Chevrolet. The claim consists of $972.00 principal and $32.40 in late charges. Claim # 8 is in the amount of $1,200.00 on the Honda for principal only. Universal claims that no security interest is held for these claims. It asserts that it holds the title and ownership of the vehicles and that the debtors have no interest in the vehicles. Thus, Universal categorizes its claims as unsecured.

At the confirmation hearing on the debtors' plan, the court ruled that the agreements between Universal and the debtors were security agreements and not true leases. The court so ruled based upon the contents of the agreements without the presentation of evidence. The plan, which provides that Universal be treated as a secured creditor with monthly payments to be made on the Honda in the amount of $175, was confirmed over Universal's objection.

The agreements entered into between Universal and the debtors are identical except for the vehicle descriptions and amounts due. The term of both agreements is 36 months and the debtor-customers are responsible under the agreements for all maintenance and repairs, insurance, taxes, licensing and registration. (Paragraphs 9, 3, 5 and 16 respectively) All express or implied warranties of fitness and merchantability are excluded. (Paragraph 10)

Paragraph 7 of the agreements contains the following information: (a) estimated wholesale value of the vehicle at the end of the lease term; (b) total lease obligation; (c) initial value of the vehicle; and (d) difference between total lease obligation and initial value of the vehicle.

For the Chevrolet, the initial value of the vehicle was listed as $5,525.00 and the total lease obligation as $8,510.00. Thus, the lease obligation was $2,985.00 more than the initial value of the Chevrolet. The estimated wholesale value at the end of the lease term was $2,750.00.

For the Honda, the initial value of the vehicle was listed as $6,469.00 and the total lease obligation as $10,552.84. Thus, the lease obligation was $4,083.84 more than the initial value of the Honda. The estimated wholesale value at the end of the lease was $4,720.84.

Paragraph 8 of the agreement states the end of term liability. If the actual value of the vehicle at the end of the lease term is greater than the estimated wholesale value of the vehicle in paragraph 7, the customer will have no further liability under the lease and may be entitled to a credit or refund. If the actual end of the lease value is less than the estimated wholesale value, the customer will be liable for any difference up to three times the monthly rent.

Paragraph 11 states that upon any default by the customer, the lessor shall be entitled to recover from the customer as liquidated damages all costs of retaking the vehicle plus 50% of any remaining periodic payments, or six months payments, whichever is greater.

Paragraph 20 provides that upon return or repossession of the vehicle, the lessor shall, within 10 days, obtain the highest available cash offer at wholesale for the vehicle at a public or private sale and notify the customer of the offer indicating the difference in amount between this offer, which constitutes the actual wholesale value of the vehicle, and the estimated wholesale value of the vehicle, less any costs of repairing, reconditioning and reselling the vehicle. The difference shall represent the gain or loss on the vehicle's disposition. The customer then has 10 days in which to notify the lessor of his acceptance of the wholesale value established by the offer or of his intention to sell the vehicle himself within an additional 10 days.

Paragraph 20 further provides that the customer agrees to pay the lessor any loss from the disposition of the vehicle and any charges then due and payable, and the lessor agrees to refund to customer any gain from the vehicle's disposition after deducting any charges due the lessor.

Paragraph 21 provides that the customer shall indemnify the lessor against any damage, loss, theft or destruction of the vehicle.

Paragraph 13 of the agreements states that the customer has no option to purchase the vehicle. Paragraph 23, one of the general provisions of the agreements, states that the agreement is one of leasing only and that the customer shall not have or acquire any right, title or interest in the vehicle.

The Bankruptcy Code defines "security interest" as a lien created by agreement. 11 U.S.C. § 101(37). It does not define "lease". However, the legislative history states that state or local law should be applied in determining whether a lease constitutes a security interest under the Bankruptcy Code. H.R. No. 95–595, 95th Cong. 1st Sess. (1977) 313–314, U.S.Code Cong. & Admin.News 1978, p. 5787. Since the agreements were consummated in Oregon where the debtors reside and Universal has an office, Oregon law applies.

ORS 71.2010(37) provides the following standards for determining whether a lease is truly a lease or was intended as a security interest:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * * Unless a lease or consignment is intended as [a] security, reservation of title thereunder is not a 'security interest' * * *. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

■ The drafters of the Uniform Commercial Code, from which this statute was taken, presupposed that the distinction between a lease and a security interest would be implemented in light of pre-Code purchase money security interest law as codified in the Uniform Sales Act. Bender Secured Transactions, 1 spec. supp. 7, 1982.

Pre-Code law limited the conversion from a lease to a security interest to those contracts where the lessee obligated himself to pay a sum substantially equivalent to the value of the property. The first sentence of ORS 71.2010(37), that a " 'security interest' means an interest . . . which secures payment or performance of an obligation", also seems to mandate this pre-Code requirement. Thus, an obligation to pay rentals during the lease term totalling an amount substantially equivalent to the fair market value of the leased property plus a financing factor as viewed at the time the property is transferred to the lessee is necessary to a finding that the lease is intended as security. *In re Peacock*, 6 B.R. 922, 924 (Bkrtcy.N.D.Tex.1980).

In the present case, it is clear that the lessee is obligated under the terms of the leases to pay the purchase price plus what might be considered to be a financing charge. The initial value of the Honda was listed as $6,469.00 and the total lease obligation as $10,552.84. Even if the lease had been terminated before the first payment due date, the lessee would have been required to pay 50% of the remaining payments under the lease. In that case, his total obligation paid or owing would amount to $5,607.42 ($5,276.42, 50% of the remaining payments, plus $331.00, payment made at the inception of the agreement) or 86.69% of the purchase price. The same is true in the case of the Chevrolet. The initial value of the vehicle was listed as $5,525.00 and the total lease obligation as $8,510.00. Thus, the court finds that the total lease obligations are substantially equal to the purchase price plus financing factor for each vehicle.

As construed by the Oregon Supreme Court, ORS 71.2010(37) requires a two-tier analysis.

" . . . (T)he first question to be answered is . . . whether the lessee may obtain the property for no additional consideration or for a nominal consideration. If so, the lease is intended for security. If not, it is then necessary to determine 'by the facts of each case' whether the lease is intended as security . . ."

*Peco, Inc. v. Hartbauer Tool & Die Co.,* 262 Or. 573, 575, 500 P.2d 708.

Therefore, before delineating the factors appropriate to a facts of the case analysis, it is necessary to determine whether the lessee shall obtain the property or, in the language of ORS 71.2010(37), "become the owner of the property for no additional consideration or for a nominal consideration."

The fact that the agreements in question contain no option to purchase the vehicles, see paragraph 13, may preclude a finding that the lessee may obtain the property for no additional or for only nominal consideration. However, it can be argued that despite the disclaimer of an option to purchase the vehicles in paragraph 13 of the agreements, the lessee may, in fact, have an option to purchase or at least a first right of refusal by the terms of paragraph 20. Paragraph 20 provides that the lessee may sell the vehicles himself or purchase them should he decide to reject any offer of sale received by the lessor. Receipt of bids by the lessor could be treated as the means to establish the option price. Whether the lessor or the lessee completes the sale, it is the lessee who will either bear the loss or receive the gain on disposition of the vehicles.

Putting that argument aside, it has also been argued that a lessee may "become the owner" not only whenever the lessor gives him an option to purchase almost sure to be exercised, but also whenever the lessor bargains away his absolute right to retake the property as when he gives the lessee the gain or loss on disposition of the property or grants a lease for the full economic life of the property. 1 Bender Secured Transactions 4A.07(1) (1982).

■ Some courts, including the Oregon Court of Appeals, have considered the lessee's gain or loss on disposition of the property as an important factor in their integrated analysis of all the factors which tend to show whether an agreement is or is not intended as a security interest. *Matter of Tillery,* 571 F.2d 1361 (5th Cir.1978); *In re Tulsa Port Warehouse Co., Inc.,* 4 B.R. 801 (Dist.Ct.N.D.Okl.1980); *In re Peacock,* 6 B.R. 922 (Bkrtcy.Tex.1980); *In re Gehrke Enterprises, Inc.,* 1 B.R. 647 (Bkrtcy.N.D. Wis.1979), *Appleway Leasing Inc. v. Wilken,* 39 Or.App. 43, 591 P.2d 382 (1979). This court will follow the practice of these courts.

The Oregon Court of Appeals has set forth five factors in addition to an option to purchase, which may assist a court in determining whether a lease is intended as a security interest. They are:

(1) whether the lessee acquires any equity in the equipment;

(2) whether the lessee is required to bear the entire risk of loss;

(3) whether the lessee is required to pay all charges and taxes imposed on ownership;

(4) whether there is a provision for acceleration of rent payments; and

(5) whether the property was purchased specifically for lease to this lessee.

*All-States Leasing Co. v. Ochs,* 42 Or.App. 319, 600 P.2d 899 (1979).

In a case decided the same year, *Appleway Leasing, Inc. v. Wilken,* 39 Or.App. 43, 591 P.2d 382 (1979), the same court considered the above factors, plus a few others, in holding that the agreement before it was intended as security. Besides providing that the lessee was responsible for taxes, insurance, and risk of loss, the subject agreement also excluded all warranties of fitness and merchantability and contained several "sales" provisions. One such sales provision was similar to paragraph 8 of the agreement between Universal and the debtors. It provided that upon termination of the lease, the lessee would pay any sum by which the anticipated fair market wholesale value of the equipment exceeds its actual fair market wholesale value at the time of the return of the equipment to the lessor. If the anticipated fair market wholesale value were less than the actual fair market value, the lessor would be required to reduce the rental. The *Appleway Leasing* court was also persuaded by a provision which stated an anticipated wholesale value

that was substantially less than the actual estimated value. In the present case, no evidence was presented to show whether a substantial discrepancy existed between actual and anticipated wholesale value.

Several of the factors considered by the Oregon courts as tending to show that a lease is, in actuality, a security interest are present in the case before this court. The agreements provide that:

(1) the lessee bear the risk of loss. (paragraph 21);

(2) the lessee provide full comprehensive fire, theft, and collision insurance on the vehicles. (paragraph 3);

(3) the lessee pay all charges and taxes (paragraphs 5 and 16), licensing and registration (paragraph 16), and repairs and maintenance (paragraph 9);

(4) all express or implied warranties of fitness and merchantability are excluded. (paragraph 10); and

(5) rent payments are substantially accelerated upon default. (paragraph 11).

Whether the property was purchased specifically for lease to this lessee is not known. However, the court considers the resolution of this question to be de minimus and thus not essential to the court's decision.

The factor of primary importance and the pivotal issue in this case is whether the lessee has acquired the risks of loss and the chance of gain on disposition of the vehicles, or, in the language of the Oregon court, whether the lessee acquires any equity in the vehicles.

Several courts other than the Oregon Court of Appeals have held that the presence of a provision nearly identical to paragraph 8 of the agreements under consideration militates toward a finding that the agreement is intended for security, especially where other indicia of sale are present. *Matter of Tillery,* 571 F.2d 1361, 23 UCC Rep.Serv. 1335 (5th Cir.1978); *In re Tulsa Warehouse Co. Inc.,* 4 B.R. 801 (Dist.Ct.N.D. Okl.1980); *In re Peacock,* 6 B.R. 922 (Bkrtcy.Tex.1980).

Both the Fifth Circuit Court of Appeals in *Matter of Tillery* and the District Court for the Northern District of Oklahoma in *In re Tulsa Warehouse Co.* have held that such "open-ended" vehicle lease agreements are intended for security. Both cases involved an agreement which provided that if the vehicle at the end of the lease term is sold for less than the guaranteed residual value, then the lessee is liable for the loss on disposition, and if it is sold for more, then the lessee is entitled to the gain. Neither court held that the absence of an option to purchase, the denomination of the agreements as "leases", or retention of title by the lessor to be controlling. The Fifth Circuit further held that a provision which stated that the lessee shall not have any right, title, or interest in or to the vehicle is also not controlling and must be interpreted in light of the other provisions of the agreement. The court noted that the termination formula providing the lessee with the loss or gain on the disposition of the vehicle constituted a recognition of the equity of the lessee in the vehicle.

This court also places little importance on the provisions in the present agreements which state that there is no option to purchase, that the agreement is one of leasing only, and that the customer shall not acquire any right, title, or interest in the vehicle. (paragraphs 13 and 23).

█ Based on the inclusion of a provision requiring the lessee to bear the loss or receive the gain on disposition of the vehicles, the language in paragraph 20 which suggests that an option to purchase or right of first refusal is given to the lessee, and the other indicia of sale noted above, the court finds that the agreements entered into between Universal and the debtors were intended as security interests.

It therefore appears that Universal's objection to the confirmation of the debtors' chapter 13 plan must be overruled. An order will be entered herein overruling Universal's objection.

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 752.