**In re Steven Leroy UNGER and Janet Ellen Unger, Debtors.**

**Bankruptcy No. 688–60335–R13.**

United States Bankruptcy Court, D. Oregon.

Jan. 11, 1989.

Barry Taub, Eugene, Or., for debtors.

Timothy J. Harold, Springfield, Or., for creditor Oldfields.

Fred Long, Trustee, Eugene, Or.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court upon the objection by Oldfields, Inc. (Oldfields) to confirmation of the debtors' proposed Chapter 13 plan dated February 26, 1988.

### BACKGROUND

On July 26, 1986, debtors and Oldfields executed a document entitled Lease Agreement and Consumer Lease Disclosure Statement regarding a 19″ Sylvania color T.V. (the TV lease).

On March 27, 1987, debtors and Oldfields executed a similarly entitled document regarding a Philco video recorder (the VCR lease).

In general, both documents can be classified as "rent-to-own" agreements. The debtors are obligated to pre-pay one month's "rent" plus a one-time refurbishing fee. After the first month, at their option, they may terminate the agreements, at any time, without any further liability and return the leased property, or they may, at their option, renew the agreements on a month-to-month basis, by paying a fixed monthly rate ($25 for the T.V. and $28 for the VCR). If the debtors renew 23 times, (so that 24 monthly payments are made in total), the ownership of the leased property passes to them. Any time before 24 months have elapsed, the debtors may elect to purchase the leased property for the price stated in § 12 of the leases ($369 for the T.V. and $349 for the VCR). If this purchase option is selected, the debtors receive credit for one-half of their monthly rental payments and the initial refurbishing fee.

The wording of the two leases is identical except for the specific amounts to be paid and certain dates, therefore, the pertinent paragraphs of the leases are reproduced here in pertinent part as they appear in the agreements themselves with prices and dates left blank so that they need only be reproduced once:

5. **TERM OF LEASE:** This lease is for ... one month and expires _____. If you decide to renew this lease, your first renewal payment is due on _____. You are not obligated in any way to renew this lease agreement after the first lease period. You may renew this agreement, if you have complied with its terms, by sending or delivering a ... monthly payment to us before the end of the lease period. You understand that we do not have a grace period for late payments and you must make payment *in advance* to continue using the property. You understand this lease terminates automatically if you do not renew it.

8. **TOTAL OF OTHER CHARGES PAYABLE TO LESSOR:** This agreement does not bear interest and there is no default charge. However, if you wish to rent the property for more than ... one month, the payment for the next ... month is due on the same date of the following ... month, and likewise as to additional ... months that you wish to lease the property. If you do not make your payment when due and we send an employee to your house to collect money

due, or if you request that we collect a rental payment at your house, you agree to pay us a fee for making the trip to your house. The amount of this charge is $10.00 per trip.

If you elect to make your rental payment by check and your check is dishonored by the bank, we will charge you an additional $7.00.

LATE CHARGE: Renter hereby agrees to pay a late charge of $2.00 per day for each day rent is not paid in advance.

9. **FEE AND TAXES** (other than use tax): You do not have to pay any fees or other taxes during this lease.

10. **INSURANCE AND DAMAGE TO THE PROPERTY:** You do not have to carry insurance on the property. However, we do not carry insurance on the property, and you are responsible for its safety until it is returned to us. You are fully responsible for damage to or loss or destruction of the property from all causes, including, but not limited to theft, vandalism, malicious mischief, or mysterious disappearance. If the property is damaged, you must pay us immediately for all repairs. You must pay us the full value of the property if you fail to return it to us when the lease terminates.

12. **OPTIONS TO PURCHASE:** If you have complied with the terms of this agreement, you can choose to buy the property at any time. The purchase price for the property will be computed as follows:

Retail price of _____ less 50% of rental payments made, less refurbishing fee, equals net payoff amount.

Or, if you lease the property for ... 24 successive one-month terms, we will transfer any unexpired warranties as described in item 14.

13. **MAINTENANCE:** During the period of this lease we will provide service for the property, covering normal repairs, at no additional charge to you. We will not be responsible for the costs of unauthorized repairs done by others.

14. **WARRANTIES:** If you choose to exercise your purchase option as dis-

cussed in item 12, we will give you the details of any manufacturer's warranty which may still be in effect. You can read these warranties at our store any time you choose.

16. **TERMINATION AND DEFAULT:** You are not obligated in any way to renew this agreement or to buy the property. You can terminate this agreement by providing for the immediate return of the property to us or by not renewing this agreement before the end of any paid rental period. You agree to pay rent until the property is returned to us or until you own it as stated in this agreement. We may terminate this agreement if you fail to keep any of your agreements. We may notify you of termination in writing or by telling you.

17. **EQUITY:** You understand that we own the property until you buy it or get ownership as stated in this agreement. During the lease term, you do not have ownership interest in the property at all, and you do not have the right to a refund of any lease payments when this agreement is terminated. This is not a sales contract. In any dispute, it shall not be interpreted as such. Renter shall have no equity in said equipment unless it is rented as stated in item 7.

19. **RETURN OF PROPERTY ON TERMINATION:** If this agreement is terminated for any reason, you agree to make arrangements with us immediately for possession of the property. You agree to pay us any rent and other charges that you owe when the property is returned.

On February 11, 1988, debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code. In their proposed Chapter 13 plan dated February 26, 1988, debtors have treated Oldfields under paragraph 2(b) as a secured creditor showing the value of the security (both the TV and VCR) at $300 with proposed monthly payments of $10 for 36 months.

Oldfields objected to the proposed plan arguing that it should be treated as a lessor and not a secured creditor. A confirmation hearing was held at which the debt-

ors objected to any consideration of Oldfields objection since Oldfields did not appear through counsel. Accordingly, an order was entered confirming the debtors' proposed plan subject, however, to any properly filed objection by Oldfields, through counsel, within 15 days. A timely objection was filed.

Accordingly, a second confirmation hearing was held to consider the properly filed objection of Oldfields. At the hearing, Oldfields employee, Richard Yarborough, testified that on similar contracts with other customers, if the customer missed a payment, Oldfields would telephone to ascertain whether the customer intended to keep the leased property or not. If not, Oldfields would set a deadline for the items' return and once returned, would generally not make a claim for future rents or even past due rental payments. He further testified that Oldfields depreciated the leased property on its books and paid the personal property taxes thereon. Further, Oldfields rents, under similar agreements, approximately 30 appliances per month, 90% of which are returned before two years, most of them being returned within six to eight months.

Debtor, JANET UNGER, testified that she entered into the leases with Oldfields intending to purchase the VCR and the T.V. She testified that she was told by an Oldfields salesman that one-half of the payments were to go towards the purchase price and that after 24 months of payments she would own the T.V. and VCR. She acknowledged that an Oldfields employee told her that she could return the items without any additional charges. It appeared, from her testimony, that the debtors clearly understood their rights and obligations under the two lease agreements.

The debtors argued that the court should not consider Oldfields' objection since it had not timely filed a proof of claim in this proceeding. This court held that Oldfields does have standing to object to the confirmation of debtors' proposed Chapter 13 plan and indicated that the matter would have to be resolved on the merits. The parties were then allowed to submit post-hearing briefs. The debtors' memorandum was submitted before the second confirmation hearing, no further briefs have been submitted on behalf of the debtors and the time for such submission has now passed. Oldfields has submitted a post-hearing brief.

Debtors contend that the "leases" with Oldfields are, in reality, security agreements, as such, Oldfields is a secured creditor and the debtors may modify Oldfields' rights pursuant to 11 U.S.C. § 1322(b)(2).

Oldfields maintains that the "leases" are true leases, as such, they must either be assumed or rejected pursuant to 11 U.S.C. § 365. In this case, Oldfields urges that the leases have terminated, by their terms, since the debtors have not renewed the leases by making appropriate payments.

## ISSUE

The issue that must be resolved by this court is whether or not the TV lease and the VCR lease are "true leases" or "disguised security agreements".

## DISCUSSION

Generally, ... "state ... law should be applied in determining whether a lease constitutes a security interest under the Bankruptcy Code." *In re Niemi*, 27 B.R. 215, 217 (Bankr.D.Or.1982). Here, the governing statute is O.R.S. 71.2010(37) (UCC § 1–201(37)) which provides in pertinent part as follows:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an *obligation.* * * * Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" * * *. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the

the lease one intended for security." (emphasis added)

Debtors argue since the agreements allow them to become the owners of the leased property after 24 rental payments for no additional consideration that the conclusive presumption of O.R.S. 71.2010(37) clause (b) (subsection (b)) applies.

The Supreme Court of Oregon has held that an option to purchase for no or nominal consideration creates a conclusive presumption of a lease "intended as security" under subsection (b), *Peco, Inc. v. Hartbauer Tool & Die Co.*, 262 Or. 573, 500 P.2d 708 (1972). The Ninth Circuit Court of Appeals has reached the same conclusion construing California's version of UCC § 1–201(37). *Aoki v. Shepherd Machinery Co.*, (*In re Thompson & Son, Inc.*), 665 F.2d 941 (9th Cir.1982), where it held that where subsection (b) applies the lease is conclusively presumed to be intended as security.

Neither court has interpreted subsection (b)'s applicability to the type of agreement presented here, where a renter may, at any time, terminate the agreement with no further liability.

It is clear that if subsection (b) applies in this case, that the leases are intended as security, as a matter of law. It is important to note, however, that O.R.S. 71.-2010(37) defines security interest as "... an interest in personal property or fixtures which secures payment or performance of an obligation."

It must first be determined whether or not there is any "obligation" to be secured. In this district, it has been held that:

Thus, an obligation to pay rentals during the lease term totalling an amount substantially equivalent to the fair market value of the leased property plus a financing factor as viewed at the time the property is transferred to the lessee is necessary to a finding that the lease is intended as security. *In re Niemi*, 27 B.R. at 217.

Courts construing "rent-to-own" agreements similar to the TV and VCR leases have concluded that such documents are indeed true leases. *See Shamrock Rental*

*Company v. Huffman*, (*In re Huffman*), 63 B.R. 737 (Bankr.N.D.Ga.1986) and *In re Armstrong*, 84 B.R. 94 (Bankr.W.D.Tex. 1988). In *Armstrong*, the court stated:

In fact, before a court can even proceed to apply the time-honored "no or nominal consideration" test, it must first determine whether the agreement of the parties even creates an obligation that could be secured. 84 B.R. at 95.

Like the "rent-to-own" agreements considered by the courts in *Huffman* and *Armstrong*, there is simply no obligation here that can be secured hence, this court need not address the applicability of subsection (b) to this case since the TV and VCR leases cannot be intended for security where there is no payment or obligation to be secured. They are therefore true leases.

Oldfields argues that based upon all of the facts of this case the leases are true leases using the critera which has been established in *All–States Leasing Company v. Ochs*, 42 Or.App. 319, 600 P.2d 899 (1979) and other cases decided subsequent thereto. In view of this court's conclusion that there is no "obligation" secured by the TV and VCR leases, however, this court will not address that argument.

It follows that confirmation of the debtors' proposed Chapter 13 plan dated February 26, 1988 must be denied, an appropriate order shall be entered.

This memorandum opinion constitutes the court's findings of fact and conclusions of law; they shall not be separately stated.