FILED

OCT 15 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. OR-12-1483-JuTaPa |
| | ) | |
| CHARLES A. GROGAN, d/b/a | ) | Bk. No. 11-65409-TMR |
| Silver Bells Tree Farm and | ) | |
| SARAH A. GROGAN, | ) | Adv. No. 11-06276-TMR |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| CHARLES A. GROGAN; | ) | |
| SARAH A. GROGAN, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M* |
| | ) | |
| HARVEST CAPITAL COMPANY; | ) | |
| DEMETER AG, LLC, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on July 25, 2013
at Butte, Montana

Filed – October 15, 2013

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Thomas M. Renn, Bankruptcy Judge, Presiding
_____

Appearances:     Laura J. Walker, Esq., of Cable Huston Benedict Haagensen & Lloyd LLP, argued for appellants, Charges A. Grogan and Sarah A. Grogan; Todd L. Friedman, Esq., of Stoel Rives LLP, argued for appellee Harvest Capital Company; Aaron J. Bell, Esq., of Bell Law Firm, PC appeared for appellee Demeter Ag, LLC.
_____

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Before:  JURY, TAYLOR, and PAPPAS, Bankruptcy Judges.

Chapter 11[1] debtors, Charles A. Grogan and Sarah A. Grogan, own and operate a Christmas tree farm.  Debtors commenced an adversary proceeding against appellees, Harvest Capital Company (Harvest) and Demeter Ag, LLC (Demeter) (collectively, Harvest and Demeter are referred to as Defendants), asserting that: (1) the collateral description in Defendants' security agreements did not include Christmas trees or, if they did, (2) the collateral description in Defendants' financing statements did not include Christmas trees and, therefore, their liens were not perfected and avoidable under § 544.  Debtors filed a motion for summary judgment (MSJ) on these issues, and Defendants filed cross-motions for summary judgment.

The bankruptcy court denied debtors' MSJ and granted Defendants' cross-motions finding that, as a matter of law, the collateral description reasonably identified the Christmas trees as Defendants' collateral under Oregon's version of the Uniform Commercial Code (UCC).  As a result, the court concluded that Defendants' notes were secured by properly perfected unavoidable security interests in debtors' Christmas trees and their proceeds.  This appeal followed.  We AFFIRM.

///

///

///

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

# I. FACTS[2]

Debtors own and operate, as a sole proprietorship, Silver Bells Tree Farm, located in Marion County, Oregon, where they plant and grow Christmas trees. Approximately twelve years after being planted, the Christmas trees are harvested for sale. At various times, debtors took out secured loans with Defendants.

## A. The Harvest Loans

In September 2006, debtors borrowed $7 million from Harvest as evidenced by two promissory notes: one for $5,500,000 (Note A) and the other for $1,500,000 (Note B). Both notes were secured by a combined mortgage/security agreement (Harvest Security Agreement), which was recorded in the Marion County real property records.

The Harvest Security Agreement provides in relevant part:

> To secure payment of the Indebtedness and performance of all obligations of mortgagor under this Mortgage, mortgagor mortgages and conveys to Lender the following:
>
> . . .
>
> (4) All trees, bushes, vines and other permanent plantings now or hereafter located on the real property (the "Plantings");
>
> (5) All intellectual property rights now or hereafter held by Mortgagor with respect to Plantings now or hereafter growing on the Real Property, including, without limitation, the SILVER BELLS BLUE™ NOBLE FIR trademark and other labels, logos, patents or patent licenses and trademark rights (the "Intellectual Property Rights"); . . . .
>
> . . . .

---

[2] Many of the facts are taken from the bankruptcy court's published opinion at 476 B.R. 270 (Bankr. D. Or. 2012).

Mortgagor presently assigns to Lender all of Mortgagor's right, title and interest in and to all rents, revenues, income, issues and profits (the "Income") from the Real Property, the Plantings, the Personal Property . . . ., whether now or hereafter due.

Mortgagor grants Lender a security interest in the Income, Plantings, the Water Rights, the Personal Property, . . . .

Section 8 of the agreement, entitled "Security Agreement, Security Interest" further provides:

8.1 Security Agreement. This instrument shall constitute a security agreement with respect to the Income, Plantings, Water Rights, Personal property, . . . .

On September 20, 2006, and September 2, 2009, respectively, Harvest filed an original and amended UCC financing statement with the Oregon Secretary of State (Harvest Financing Statements). Exhibit B to each of the Harvest Financing Statements stated that the collateral included, among other things:

2. All improvements, fixtures, equipment, construction materials, and other articles of personal property now owned or hereafter acquired by the Debtor that now or hereafter are located on, affixed or attached to, or incorporated in the Land, including all irrigation pumps, motors, pipes, sprinklers and other irrigation equipment.

3. All trees, bushes, vines and other permanent plantings now or hereafter located on the Land.[3]

4. All intellectual property rights of Debtor with respect to Christmas trees, vines or other permanent plantings now or hereafter growing on the Land,

_____

[3] As discussed below, debtors placed at issue in their MSJ the description of collateral contained in § 4 of the security agreement and § 3 of the financing statement which were virtually identical; i.e., "[a]ll trees, bushes, vines and other permanent plantings . . . ." Debtors maintained that this description could not include Christmas trees.

-4-

including, without limitation, the SILVER BELLS BLUE™ NOBLE FIR trademark and all patents, trademarks and patent licenses and trademark rights.

The Harvest Financing Statements were timely continued by a continuation statement filed on August 4, 2011.

**B.    The Demeter Loan**

In March 2008, the Grogans borrowed $225,000 from Demeter evidenced by a promissory note and secured by a combined mortgage, assignment of rents and security agreement and fixture filing.  In February 2010, the original note was replaced by a $400,000 note (Demeter Note).  The original mortgage/security agreement was also replaced by an amended and restated agreement (Demeter Security Agreement).  The Demeter Security Agreement stated that to secure payment of the indebtedness, debtors conveyed a security interest to Lender in, among other things, "(4) All Christmas trees, trees, and timber now or hereafter grown, growing or to be grown on the Real Property (the "Trees")."[4]  The Demeter Security Agreement was duly recorded in the Marion County real property records on February 19, 2010.[5]

Demeter filed a UCC financing statement with the Oregon Secretary of State on March 18, 2008 (Demeter Financing Statement).  Exhibit B to the Demeter Financing Statement stated that the collateral covered included, among other things:

---

[4] The Demeter Security Agreement also contained another paragraph similar to that in the Harvest Security Agreement: "(5) All trees, bushes, vines and other permanent plantings now or hereafter located on the Real Property (the "Plantings")."

[5] Demeter was also assigned rights under loans made to the Grogans by Heinze Investments, LLC.  Demeter's rights under those loans are not at issue in this appeal.

-5-

2.   All improvements, fixtures, equipment, construction material, and other articles of personal property now owned and hereafter acquired by the Debtor that now or hereafter are located on, affixed or attached to, or incorporated in the Land, including all irrigation pumps, motors, pipes, sprinklers and other irrigation equipment.

3.   All trees, bushes, vines and other permanent plantings now or hereafter located on the Land;

4.   All intellectual property rights of Debtor with respect to Christmas trees, vines or other permanent plantings now or hereafter growing on the Land, including, without limitation, the SILVER BELLS BLUE™ NOBLE FIR trademark and all patents, trademarks and patent licenses and trademark rights.

**C.   Bankruptcy Proceedings**

On October 31, 2011, debtors filed a voluntary chapter 11 petition.

On December 15, 2011, debtors commenced an adversary proceeding against Defendants, seeking a declaration that Defendants did not have an enforceable and perfected security interest in the Christmas trees because the collateral description in Defendants' security agreements and financing statements was inadequate.  Debtors also sought attorneys' fees and costs.

On January 17, 2012, Harvest filed an answer, counterclaim and third-party complaint.  Harvest's counterclaim was for attorneys' fees and costs.  The third-party complaint asserted a claim for conversion against the law firm which had received $180,000 from debtors as a retainer for legal services.  Harvest alleged that this amount was subject to its security interest in the proceeds from the sale of Christmas trees.  In a stipulated order filed February 15, 2012, the parties agreed to bifurcate and abate the third-party complaint until the bankruptcy court

entered a judgment in the adversary proceeding.[6]

On March 29, 2012, debtors filed their MSJ, seeking a declaration that Defendants did not have a valid, perfected lien on the Christmas trees or other crops, or their proceeds. Debtors asserted that the phrase "[a]ll trees, bushes, vines and other permanent plantings . . ." did not reasonably identify Christmas trees because the term "trees" was modified by the word "permanent," and Christmas trees are "crops" and "crops" by definition are not "permanent" under the holding of Rainier Nat'l Bank v. Sec. State Bank, 796 P.2d 443, 445 (Wash. 1990).

On April 3, 2012, debtors filed their second amended complaint (SAC). The SAC contained two claims: the first was again for a declaration that Defendants did not have enforceable and perfected security interests in debtors' Christmas trees and other crops or their proceeds; alternatively, assuming such liens exist, the second claim sought to avoid the liens under § 544[7] because they were not properly perfected liens in the Christmas trees due to the inadequate collateral description in Defendants' financing statements.

On April 17, 2012, Demeter answered the SAC and counterclaimed for its attorneys' fees and costs.

On April 20, 2012, Harvest filed its amended answer, counterclaim, and third-party complaint.

---

[6] This matter was later reinstated after the bankruptcy court entered judgment on the cross motions for summary judgment.

[7] Generally, under § 544(a), a debtor in possession can avoid prepetition security interests that have not been properly perfected. See NetBank, FSB v. Kipperman (In re Commercial Money Ctr., Inc.), 350 B.R. 465, 474 (9th Cir. BAP 2006).

-7-

On April 23, 2012, Harvest filed its cross-MSJ and response to debtors' MSJ. On the same date, Demeter filed its cross-MSJ and response to debtors' MSJ.

On June 21, 2012, the bankruptcy court heard the matter and took it under advisement.

On July 26, 2012, the bankruptcy court issued its Memorandum Opinion concluding that, as a matter of law, Defendants' security agreements and financing statements reasonably identified Christmas trees as collateral subject to their security interests. In reaching this conclusion, the bankruptcy court examined the relevant sections of Oregon's version of the revised UCC for collateral descriptions, considered whether the doctrine of the last antecedent (DOTLA) applied, found debtors' reliance on Rainier unpersuasive, and used common law contract principles to objectively determine whether Christmas trees were included in the collateral description.

In considering the phrase "[a]ll trees, bushes, vines and other permanent plantings . . . ," the bankruptcy court found that application of the DOTLA was inconclusive on whether "permanent" modified "trees" and "bushes" as well as "vines." As a result, the court concluded that "such ambiguity alone would cause a reasonable party to inquire further."

Under a contract analysis, the court dispelled debtors' theory that the collateral description "[a]ll trees, bushes, vines and other permanent plantings", defined together as "Plantings," could not include Christmas trees. The bankruptcy court reasoned that the use of the word "Plantings" to define

-8-

the group of plants which are collateral "itself connotes something planted as opposed to growing naturally." The court examined the dictionary definition of "planting" - "an area where plants are grown for commercial or decorative purposes; also: the plants grown in such an area," and concluded from this definition a reasonable third party examining Harvest's Security Agreement would know that the only (or at least the vast majority of) crops debtors planted consisted of Christmas trees. Finally, the bankruptcy court noted that the phrase "permanent crops" is commonly used in many statutory schemes, typically to distinguish them from "annual" crops. Because of this usage, the court was not convinced by debtors' reliance on Rainier for their argument that the words "permanent" and "crops" were mutually exclusive.

Moving beyond the phrase at issue, and construing Harvest's Security Agreement as a whole, the bankruptcy court concluded that any reasonable person's doubt as to what "all permanent trees" means in § 4 of Harvest's Security Agreement would be resolved by reading § 5, which granted Harvest a security interest in all intellectual property . . . "with respect to Plantings" and included the SILVER BELLS BLUE™ NOBLE FIR trademark. The court reasoned that because the intellectual property was "with respect to Plantings," the trademark on Christmas trees "related to" or "refers to" "Plantings," and as a consequence, "Plantings" by necessity included Christmas trees.

Last, the bankruptcy court noted that §§ 4 and 5 of Harvest's Security Agreement would at least lead a reasonable

-9-

inquirer to identify Christmas trees as collateral.  In that regard, the court observed that a reasonable person could objectively determine that money was loaned to debtors, debtors owned a Christmas tree farm with approximately one million Christmas trees on their property, and their primary, if not sole, source of income to repay the loan was generated by those trees.  Under these circumstances, the bankruptcy court concluded that there would need to be "crystal clear" exclusionary language in the collateral description to stop further inquiry, which there was not.

The court also found that a reasonable inquirer would examine Note B, which the Harvest Security Agreement referenced, and which specifically referenced Christmas trees as "collateral."[8]

---

[8] Exhibit A to Note B provides in relevant part:

(j) Borrower shall provide Lender by March 1 of each year with a certified tree inventory (the "Certificate of Inventory") which will include a current Christmas tree count for all land described in the Mortgage, categorized by land tract, year planted and tree size. The Certification of Inventory shall also include a two-year projected harvest and planting schedule identifying number of trees, variety and location. Borrower shall certify that the Certificate of Inventory as being true, correct and complete to Borrower's best knowledge.

(k) Borrower shall provide Lender complete access to the property encumbered by the Mortgage within reasonable time after request for such access in order to permit Lender to verify the information contained in the Certification of Inventory or otherwise to confirm the collateral value of the Christmas trees (the "Tree Collateral Value") and the total collateral value of

(continued...)

-10-

Although the description of the collateral used in the Harvest Financing Statements was slightly different than that used in Harvest's Security Agreement, the bankruptcy court concluded that the financing statements' description of collateral included Christmas trees for essentially the same reasons as the security agreement.

Finally, with respect to Demeter, its security agreement specifically referenced "[a]ll Christmas trees" as part of the collateral. Therefore, the bankruptcy court found that it clearly met the reasonable identification test under the UCC. Since Demeter's Financing Statement had the exact same language as Harvest's Financing Statements, the court found that it too sufficiently indicated the collateral as required under the UCC.

In sum, the court found Defendants' notes were secured by properly perfected unavoidable security interests in debtors' Christmas trees and their proceeds. The court concluded that Defendants' entitlement to attorneys' fees and costs would be determined at a subsequent hearing.[9]

On September 10, 2012, the bankruptcy court entered an order denying debtors' MSJ and granting Defendants'

---

[8](...continued)
all property encumbered by the Mortgage (the "Total Collateral Value").

[9] The Defendants' entitlement to attorneys' fees and costs was to be determined in a supplemental proceeding pursuant to Rule 7054 and Local Bankr. Rules 7054-1 and 9021-1(c). The latter rule states that the time deadlines which related to the filing or objecting to a cost bill also applied to filing or objecting to a request for attorney fees in a contested matter or adversary proceeding in which judgment is sought for the prevailing party's attorney fees.

cross-motions. On the same day, the court entered a partial judgment[10] denying debtors' MSJ and granting Defendants' cross-motions.

On September 20, 2012, debtors filed a timely notice of appeal from the partial judgment.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the collateral description in Demeter's Security Agreement and Financing Statement was sufficient to give it a properly perfected unavoidable security interest in debtors' Christmas trees; and

B. Whether the collateral description in Harvest's Security Agreement and Financing Statements was sufficient to give it a properly perfected unavoidable security interest in debtors' Christmas trees.

## IV. STANDARD OF REVIEW

We review de novo the bankruptcy court's ruling on cross-motions for summary judgment, its interpretation of security agreements, and its interpretation of state law. Trunk v. City of San Diego, 629 F.3d 1099, 1105 (9th Cir. 2011) (summary judgment); Conrad v. Ace Prop. & Cas. Ins. Co.,

---

[10] In its partial judgment, the bankruptcy court certified the judgment as appealable under Civil Rule 54(b), incorporated by Rule 7054, finding there was no just reason for delay. As a result, we consider the partial judgment final for purposes of appeal.

-12-

532 F.3d 1000, 1004 (9th Cir. 2008) (interpretation and meaning of contracts); <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 231 (1991) (interpretation of state law).

## V. DISCUSSION

On a motion for summary judgment, the moving party has the burden to show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Civil Rule 56(a) (made applicable by Rule 7056). Material facts are such facts as may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is appropriate when neither party contests the facts relevant to a legal determination.

Here, whether the collateral description contained in referenced documents is legally sufficient is reviewed de novo because the parties have conceded that the question can be answered by referring to the law. Neither party has contested any material facts that are relevant to this legal determination in this appeal nor have debtors put their subjective intent to grant Defendants a security interest in their Christmas trees at issue.[11]

**A. Collateral Descriptions: Legal Standards**

The parties agree that the nature and extent of Defendants'

---

[11] Debtors did not dispute that they executed the security agreements with Defendants or that they granted some security interest in collateral related to their Christmas tree farm. They also did not dispute that Defendants had properly filed their financing statements with the Oregon Secretary of State.

security interests are determined under Oregon's UCC law.[12] See Butner v. United States, 440 U.S. 48, 55 (1979); In re S. Cal. Plastics, 165 F.3d 1243, 1248 (9th Cir. 1999) (to determine the validity, nature and effect of a lien courts must look to state law). Under Oregon law, "two steps are required to create an enforceable security interest: attachment and perfection." In re Stein, 261 B.R. 680, 688 (Bankr. D. Or. 2001). The requirements for attachment and perfection are found in Oregon's version of the UCC, Oregon Revised Statutes (ORS) at Chapters 71 through 79.[13]

The collateral description requirement for security agreements is governed by ORS 79.0108 which sets forth a reasonable identification test. Under ORS 79.0504, "[a] financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) A description

---

[12] In approximately 2001, all fifty states adopted Revised Article 9. Therefore, in all material respects the law is uniform after that date.

[13] Generally, provisions of the UCC must be "liberally construed and applied to promote its underlying purposes and policies, which are: (a) To simplify, clarify and modernize the law governing commercial transactions; (b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (c) To make uniform the law among the various jurisdictions." ORS 71.1030(1). Although we look first to Oregon law, this last directive of making uniform law among the various jurisdictions "anticipates reference to judicial decisions of other jurisdictions construing the common text of the UCC." In re Walter B. Scott & Sons, Inc., 436 B.R. 582, 596 n.20 (Bankr. D. Idaho 2010) (citing Hopkins v. Lojek (In re Scheu), 356 B.R. 751, 755 & n.11 (Bankr. D. Idaho 2006) (citing with approval the Ninth Circuit Bankruptcy Appellate Panel's interpretation of a provision of the California UCC identical to Idaho's version)).

-14-

of the collateral pursuant to ORS 79.0108; or (2) An indication that the financing statement covers all assets or all personal property."

### 1. The Reasonable Identification Test

A security interest cannot be perfected until it attaches and a security interest cannot attach until the requirements of ORS 79.0203 are met. ORS 79.0203 provides that one of the prerequisites for the creation of a valid security interest is that "[t]he debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned[.]"[14] ORS 79.0203(2)(c)(A). "The primary function of 9-203 is that of a statute of frauds; it is designed mainly to minimize disputes over whether there was an agreement and over what collateral it could have covered." Nw. Acceptance Corp., 841 F.2d at 921. A description of collateral in the security agreement is sufficient if it "reasonably identifies what is described" or is otherwise "objectively determinable." ORS 79.0108(1)(a) and (2)(f).

Under ORS 79.0502(1)(c), a financing statement must "indicate" the collateral it covers. Under ORS 79.0504(1), a financing statement sufficiently "indicates" the collateral if it contains a description of the collateral pursuant to ORS 79.0108. As noted, ORS 79.0108 sets forth a "reasonable

---

[14] Even if the Christmas trees are considered standing timber, they were covered under the description of collateral. Because the mortgage was filed in the real property records Harvest was properly perfected. See ORS 79.502(c)(2)(B) and (3).

-15-

identification test" for collateral descriptions: "[A] description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described . . . ." ORS 79.0108(1)(a). The statute gives examples of reasonable identification of collateral by a "[s]pecific listing . . . or . . . any other method, if the identity of the collateral is objectively determinable." ORS 79.0108(2)(a) and (f).

The Oregon Supreme Court has rejected a reasonable identification test that "requires exactitude and excessive detail." Cmty. Bank v. Jones, 566 P.2d 470, 481 (Or. 1977). Official Comment 2 to UCC 9-108 also "rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called 'serial number' test)." See In re Commercial Money Ctr., Inc.), 350 B.R. at 475 (noting the usefulness of the Official Comments in interpreting the UCC). One treatise explains: UCC 9-108(a) "requires only that the description 'reasonably identify' the collateral, leaving considerable slack." 4 White, Summers, & Hillman, Uniform Commercial Code § 31-3 (6th ed.).

Finally, the reasonable identification test is satisfied if the description in the security agreement or financing statement provides enough information to enable third parties to identify the collateral upon reasonable inquiry. See Willamette Prod. Credit Ass'n v. Lovelady (In re Lovelady), 21 B.R. 182, 184 (Bankr. D. Or. 1982) (construing ORS 79.1100, predecessor to ORS 79.0108 in connection with collateral description in security agreement and financing statement); Appleway Leasing,

-16-

Inc. v. Wilken, 591 P.2d 382, 384 (Or. 1979) (construing former ORS 79.1100 in connection with collateral description in financing statement); see also In re Brown, 479 B.R. 112 (Bankr. D. Kan. 2012) ("In order for collateral to be 'reasonably identified' in security agreement, so as to allow security interest to attach, description in security agreement must be such that it allows third persons, aided by reasonable inquiries which the instrument itself suggests, to identify the property; if document gives clues sufficient that third persons by reasonable care and diligence may ascertain the property covered, then it is adequate under Kansas law."); Rice v. Miller, 864 N.Y.S.2d 255, 258 (N.Y. Sup. Ct. 2008) (applying New York law, UCC 9-108(b)(6)'s standard is met "if a third party could determine what items of the debtor's collateral are subject to the creditor's security interest").

**2.    Rules Unique to Security Agreements**

Oregon courts recognize that security agreements are contracts. Community Bank, 566 P.2d at 478; Matter of Hill's Estate, 557 P.2d 1367, 1374 (Or. Ct. App. 1976). As such, Oregon courts construe security agreements by applying common law contract principles. Oregon follows an objective theory of contracts which requires that contracts be construed in accordance with the parties' objective manifestations of intent; i.e., as a reasonable third party would understand the intent of the parties. Harty v. Bye, 483 P.2d 458, 461 (Or. 1971). In determining objective intent, the court examines the text and context of the disputed provision, considering the contract as a whole, to determine whether the disputed provision is ambiguous.

-17-

See ORS 42.230; Yogman v. Parrott, 937 P.2d 1019, 1021 (Or. 1997). Dictionary definitions may be used to determine whether a provision is ambiguous. Yogman, 937 P.2d at 1021.

With these guidelines in mind, we consider the merits.

**B. Demeter's Security Agreement and Financing Statement**

We note that unlike Harvest's Security Agreement, Demeter's Security Agreement at § 4 specifically references "[a]ll Christmas trees" as part of the collateral. Therefore, there is no question that this collateral description meets ORS 79.0108(2)'s standard.

We also conclude that the Demeter Financing Statement reasonably indicated that it covered the Christmas trees by stating that the collateral covered, among other things: "other articles of personal property that now or hereafter are located on, affixed or attached to, or incorporated in the Land . . . ." See Exhibit B to the Demeter Financing Statement, ¶ 2. This description meets the statutory requirements for collateral descriptions in financing statements. See ORS 79.0504(2) ("[a] financing statement sufficiently indicates the collateral that it covers if the financing statement provides . . . [a]n indication that the financing statement covers . . . all personal property.").

**C. Harvest's Security Agreement and Financing Statement**

With respect to Harvest, debtors reiterate most of the arguments made in the bankruptcy court. They again place at issue the phrase in § 4 of the security agreement, "[a]ll trees, bushes, vines and other permanent plantings . . . ." contending this plain and simple language does not include Christmas trees.

-18-

Debtors seize on the word "permanent" in the clause "other permanent plantings," maintaining that it is as applicable to the first listed words "[a]ll trees, bushes, vines" as to the last word, "plantings." Under debtors' view, the phrase should be read as meaning "[a]ll permanent trees, permanent bushes, permanent vines and other permanent plantings." Debtors then contend that Christmas trees do not fall within the class of "permanent" trees relying on the dictionary definition of "permanent" and Rainier, a Washington case, which found that Christmas trees were "crops" and "crops" by definition are not permanent. According to this argument, § 4's collateral description is unambiguous and described with such particularity that no further inquiry would have been required of a third party. We are not convinced.

First, the language in § 4 of Harvest's Security Agreement "[a]ll trees, bushes, vines and other permanent plantings" is broad enough to include Christmas trees as either "trees" or "permanent" trees for purposes of the UCC reasonable identification test.

Second, we cannot say that "permanent" modifies "all trees" by examining the clause in isolation like debtors do. Contract principles dictate that we examine the text and context of Harvest's Security Agreement as a whole. Further, although the missing comma between "vines" and the conjunction "and" may pose a grammatical problem for some, "[p]unctuation or the absence of punctuation in a contract is ineffectual to control its construction. . . ." 17A Am. Jur. 2d Contracts § 366. As an

interpretative tool, the DOTLA[15] is equally unreliable because the rule is not an absolute and can be overcome by other indicia of meaning. <u>Barnhart v. Thomas</u>, 540 U.S. 20, 26 (2003). Indeed, the bankruptcy court found the DOTLA's application did not resolve the interpretative problem before it.

Construing the security agreement as a whole, § 4 of the Harvest Security Agreement defined "[a]ll trees, bushes, vines and other permanent plantings" as the "Plantings." We agree with the bankruptcy court's reasoning that the dictionary definition of "Plantings," in conjunction with use of the defined term "Plantings" in § 5, provides a textual clue to a reasonable third party that the meaning of "[a]ll trees, bushes, vines and other permanent plantings" could include Christmas trees.

Regardless, other provisions in the security agreement contain language that expressly grant Harvest a security in the "Plantings" which includes trees whether they are permanent or not and consistent with this assigns the rights to income from the Plantings. The agreement provides under § 6: "Mortgagor presently assigns to Lender all of Mortgagor's right, title and

---

[15] Under the DOTLA, "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." <u>See</u> 2A N. Singer, <u>Sutherland on Statutory Construction</u> § 47.33 (7th ed. 2012). Applying the rule here would mean that "and other permanent plantings" referred only to "vines" and not "[a]ll trees, bushes." However, this left the phrase without a coordinating conjunction which was inconsistent with other granting provisions in the security agreement. As a result, the bankruptcy court did not rely on the doctrine to ascertain the meaning of § 4. Hence, debtors' assertion that the bankruptcy court gave the DOTLA undue weight is without merit.

-20-

interest in and to all rents, revenues, income, issues and profits (the "Income") from . . . the Plantings, the Personal Property . . ., whether now or hereafter due."  The agreement continues "Mortgagor grants Lender a security interest in the Income, Plantings, . . ., the Personal Property, . . . ."

Taken together, these provisions evidence the UCC's broad policy of leniency for collateral descriptions.  Indeed, the Ninth Circuit in <u>Biggins v. Sw. Bank</u>, 490 F.2d 1304, 1308 (9th Cir. 1974) previously rejected an argument similar to debtors' because such "extensive textual analysis" is inconsistent with the overall purpose of the UCC.  Under the rules of construction expressly provided, even those descriptions that are unclear or susceptible to more than one distinct meaning may be sufficient in circumstances in which the description would allow a third person, aided by reasonable inquiries which the instrument itself suggests, to identify the collateral.

In short, at minimum, a third party would have been able to determine whether Harvest claimed a security interest in "trees" upon further inquiry.  The collateral, Christmas trees, was objectively determinable:  upon inquiry, a reasonable third person could determine that money was loaned to debtors (the security agreement says so), debtors owned a Christmas tree farm with approximately 1 million Christmas trees on their property, and their primary, if not sole, source of income to repay the loan was generated by those trees.[16]

---

[16] Because we find Harvest's security included the Christmas trees based on the provisions cited above, it is unnecessary for
(continued...)

Finally, if there are any lingering doubts, Harvest's UCC-1 perfects an interest in all personal property located on the real property at issue.  The Revised Article 9 in Oregon and elsewhere allows perfection pursuant to a UCC-1 that states "all personal property."  Therefore, debtors' reliance on <u>Matter of H.L. Bennett Co.</u>, 588 F.2d 389 (3d Cir. 1988) is misplaced since that case is out-dated.

In sum, we agree with the bankruptcy court's conclusion that Defendants' notes were secured by a perfected unavoidable security interest in debtors' Christmas trees.  That security also "attaches to any identifiable proceeds of collateral." ORS 79.0315(1)(b).  Therefore, Defendants have a perfected security interest in the proceeds from the sale of debtors' Christmas trees as well.

**VI.  CONCLUSION**

For the reasons stated, we AFFIRM.

---

[16](...continued)
us to rely on the language in the Note B.